[No. 26402.    Department One.    October 1, 1936.]

THE STATE OF WASHINGTON, *on the Relation of M. J. Evich et al., Plaintiff,* v. THE SUPERIOR COURT FOR THURSTON COUNTY *et al., Respondents.*[1]

*John F. Evich* and *Tom Alderson,* for relators.

*The Attorney General, L. C. Brodbeck, Assistant,* and *Neal, Brodie & Trullinger,* for respondents.

[1]Reported in 61 P. (2d) 143.

GERAGHTY, J.—This case is brought here on a writ of certiorari to review a judgment of the superior court of Thurston county dismissing an action brought by M. J. Evich, P. H. Green, and John Evich to prohibit Ernest N. Hutchinson, as secretary of state, from certifying to the county auditors of the state, for printing upon the official ballots at the next ensuing general election, a proposed measure identified as initiative measure to the legislature No. 5. The real parties in interest in this proceeding are the relators and the secretary of state, who will hereafter be referred to as respondent.

The essential facts as alleged in the complaint follow: The relators are legal voters and taxpayers of the state of Washington, are engaged in the fishing industry in the state, own and operate purse seine boats, and are purse seine fishermen. On November 20, 1934, there was tendered to the respondent five copies of a proposed measure as an initiative to the legislature, together with the required affidavit of the proponent. The measure was filed by the respondent, given serial number 5, and transmitted to the attorney general for a ballot title. The ballot title submitted by the attorney general to the respondent was by him transmitted to the proponent of the measure. Thereafter, the proponent submitted to the respondent for filing, canvass, and count, petitions requesting the passage of the measure, said to contain in excess of ninety thousand names of legal voters.

No complete canvass and count of the names of the legal voters claimed to be signed to the petition was ever made by the respondent as required by the statutes, but, notwithstanding this fact, the respondent, on January 14, 1935, certified the initiative measure to the presiding officers of the houses of the legislature by message as follows:

"On the twentieth day of November, 1934, Wm. H. Fisher of 1008 South 5th Street, Kelso, Cowlitz County, Washington, tendered five (5) copies of a proposed measure as an initiative to the Legislature of the State of Washington, together with his affidavit giving his post office address, and that he is a legal voter.

"The copies of the proposed measure were filed and the measure was given serial number 5. A copy was transmitted to the Attorney General for Ballot Title, and on November 21, 1934, the following Ballot Title was received from the Attorney General:

" 'BALLOT TITLE

" 'Initiative Measure to The Legislature No. 5

" 'An Act relating to fisheries; prohibiting the use of purse seines and the owning, using or maintaining of any boat or any appliance in connection therewith used in fishing for salmon or other designated fish; prescribing penalties and forfeitures; and repealing all acts and parts of acts in conflict therewith.'

"On November 21st, 1934, the exact language of the above quoted Ballot Title was transmitted to Wm. H. Fisher, 1008 South 5th Street, Kelso, Washington, by telegram and confirmed by mail as is required by law.

"I certify further that on January 3d, 1935, Wm. H. Fisher submitted petitions *said to contain* in excess of 90,000 names of legal voters for filing and canvass, and requested that report of the final canvass and count be certified to the Legislature.

"Accompanying the petitions was a statement of receipts and disbursements had in connection with the circulation of petitions which statement was verified by the affidavit of Walter Hufford, Secretary-Treasurer of the Initiative No. 5 Campaign Committee of the Cowlitz County Sportsmen Association.

"On January 4th, 1935, a preliminary canvass of the names of voters who signed the petitions was made, the result of which indicated that there were *apparently* in excess of 90,000 names signed to the petitions. The petitions were accepted for further examination, canvass and count as is required by law.

"In the absence of the Governor the sheets containing the signatures were detached in the presence

of Cliff Yelle, State Auditor and Otto Case, State Treasurer. They were then bound in 97 volumes for convenience in filing and canvassing as is permitted by law. The count of these showed that 90,101 signatures had been obtained.

"The canvass has proceeded as expeditiously as possible since the time of filing and is continuing at present. Of 8,794 names signed in rural precincts, 7,532 have been certified to be the names of legal voters by the various rural registration officers. Of 81,307 names signed by persons in incorporated towns and cities, 33,188 have been compared with the identification cards in my possession 12,907 have been found to be valid signatures of legal voters agreeing in every particular with the signatures on their identification cards, 20,281 have been found either to differ from the method of signature upon the cards, or to have been not registered.

"The above figures show that 48.6% (per cent) of the names thus far checked have been found to be the signatures of legal voters of the State of Washington.

"A certified copy of the proposed measure and a certified copy of the affidavit accompanying it are presented to you." (Italics ours.)

Thereafter, the senate and house of representatives, by resolutions, expunged the measure from their records for the reason that it had been improperly and illegally certified, and returned it to the respondent.

It is alleged that, notwithstanding these facts, the respondent threatens to, and unless restrained will, certify the measure to the county auditors of the various counties of the state to be placed upon the ballot to be voted on by the people at the next ensuing general election, and will prepare and cause to be printed at the expense of the taxpayers of the state of Washington the pamphlet required by law to be published and distributed, containing proposed measures submitted to the electors upon the ballots in use at the election; that, unless the injunctive relief prayed for

be granted, the relators and numerous other legal voters and taxpayers of the state will suffer irreparable damage and injury, and that the relators have no speedy and adequate remedy in the ordinary course of law. It appears that, before the institution of the action, the pamphlets referred to containing the challenged measure had been printed and placed in the mail for distribution.

The respondent demurred to the complaint upon the grounds that the court was without jurisdiction of the subject matter of the action and that the complaint did not contain facts sufficient to constitute a cause of action.

Walter Hufford applied to the court for permission to intervene in the action, alleging in support of his petition that he had been and was then the secretary-treasurer of initiative No. 5 campaign committee of the Cowlitz County Sportsmen Association, formed for the purpose of sponsoring the measure. His petition having been granted, he filed a motion to quash an alternative writ of prohibition that had issued and demurred to the complaint upon the grounds stated in the respondent's demurrer and the additional grounds that the relators were without legal capacity to sue, and that the action had not been commenced within the time limited by law.

After argument of the issues raised by the complaint, demurrers, and motion to quash, the trial court filed a memorandum opinion sustaining the demurrers to the complaint upon the ground that the case was controlled by Rem. Rev. Stat., § 5413 [P. C. § 2766]. Relators having declined to plead further, judgment was entered quashing the alternative writ and dismissing the action.

Article II, § 1 of the constitution, as amended (amendment 7), provides in part:

"(a) Initiative: The first power reserved by the people is the initiative. Ten per centum, but in no case more than fifty thousand, of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure as proposed. Initiative petitions shall be filed with the secretary of state not less than four months before the election at which they are to be voted upon, or not less than ten days before any regular session of the legislature. If filed at least four months before the election at which they are to be voted upon, he shall submit the same to the vote of the people at the said election. If such petitions are filed not less than ten days before any regular session of the legislature, he shall transmit the same to the legislature as soon as it convenes and organizes. Such initiative measure shall take precedence over all other measures in the legislature except appropriation bills and shall be either enacted or rejected without change or amendment by the legislature before the end of such regular session. If any such initiative measure shall be enacted by the legislature it shall be subject to the referendum petition, or it may be enacted and referred by the legislature to the people for approval or rejection at the next regular election. If it is rejected or if no action is taken upon it by the legislature before the end of such regular session, the secretary of state shall submit it to the people for approval or rejection at the next ensuing regular general election. . . ."

By another of its provisions, this section is made self-executing, but legislation to facilitate its operation is authorized. Pursuant to this authorization, facilitating legislation has been enacted.

Rem. Rev. Stat., § 5407 [P. C. § 2760], makes the vote cast for the governor at the last regular gubernatorial election the basis for determining whether the required percentage of the names of legal voters is contained on the petition. In this instance the signatures of fifty thousand legal voters were required.

Section 5408 [P. C. § 2761] provides:

"The secretary of state upon any such petition being submitted to him for filing shall examine the same, and if upon examination said petition appear to be in proper form and to bear the requisite number of signatures of legal voters, and if said petition be an initiative petition proposing a measure to be submitted to the legislature at its next ensuing regular session and is submitted for filing not less than ten days before such regular session . . . shall accept and file said petition in his office; otherwise, he shall refuse to file the same, but shall stamp on said petitions the word 'submitted' and the date of submission, and shall retain said petitions pending appeal."

Section 5409 [P. C. § 2762] provides for a court review in case the secretary of state should refuse to accept and file a petition.

Section 5410 [P. C. § 2763] provides that, if the secretary of state accept and file a petition, he shall forthwith, in the presence of the governor, or if the governor be absent, in the presence of some other state officer and in the presence of the persons submitting such petition for filing, if they desire to be present, detach the sheets containing the signatures and certificates and cause them all to be attached to one or more printed copies of the proposed initiative in such volumes as will be most convenient for canvassing and filing, and shall number and file the volumes and stamp on each thereof the date of filing.

Rem. Rev. Stat. (Sup.), §§ 5411 and 5412 [P. C. §§ 2764, 2765], providing for canvassing the petitions, are as follows:

"Upon filing such volumes of an initiative petition proposing a measure for submission to the legislature at its next regular session, the secretary of state shall forthwith in the presence of at least one person representing the advocates and one person representing the opponents of the proposed measure, should either

desire to be present, proceed to canvass and count the names of legal voters, the names of such legal voters to be certified in rural voting precincts until January 2, 1936, on such petition. If he find the same name signed to more than one petition he shall reject both names from the count. If, at the conclusion of the canvass and count, it shall appear that such petition bears the requisite number of names of legal voters, the secretary of state shall transmit a certified copy of such proposed measure to the legislature at the opening of its session together with a certificate of the facts relating to the filing of such petition and the canvass thereof.'' Rem. Rev. Stat. (Sup.), § 5411.

''The secretary of state shall, while making said canvass, keep a record of all names appearing on said petition which are not registered voters and of all names appearing more than once on said petition, and shall report the same to the prosecuting attorneys of the respective counties where such names were signed to the end that prosecutions may be had for violations of this act.'' Rem. Rev. Stat. (Sup.), § 5412.

Rem. Rev. Stat., § 5413 [P. C. § 2766], provides that any citizen dissatisfied with the determination of the secretary of state that the petition does or does not contain the requisite number of signatures of legal voters may, within five days after such determination, apply to the superior court of Thurston county for a citation requiring him to submit the petition to the court for examination and for a writ of mandate compelling the certification of the measure and petition, ''or for an injunction to prevent the certification thereof to the legislature, as the case may be   .   .   .''

From the foregoing provisions of the statute, it will be observed that, after the petitions are lodged with the secretary of state, before the measure is finally certified for submission to the voters or to the legislature, he is required to make two determinations: First, whether the tendered petitions on their face contain *prima facie* the requisite number of signatures.

If he determine that they do not contain the required number, he may refuse to accept and file the petitions. From this determination, an appeal lies to the superior court of Thurston county. Secondly, if the petitions are accepted and filed, he is to canvass and count the names of certified legal voters on the petition. In this canvass, if he find the same name signed to more than one petition, he is to reject both names from the count and, if at the conclusion of the canvass and count it appear that the petition bears the requisite number of signatures of certified legal voters, he is to certify the proposed measure to the legislature at the opening of its session, together with a certificate of the facts relating to the filing of such petition and canvass. From this second determination, also, an appeal lies to the superior court, to be taken within five days after the announcement of his determination that the petitions contain or do not contain the requisite number of signatures of legal voters.

█ By his demurrer, the respondent secretary of state admits that he did not canvass the petition as required by Rem. Rev. Stat. (Sup.), § 5411 [P. C. § 2764], but contends that the remedy by appeal provided by Rem. Rev. Stat., § 5413 [P. C. § 2766], is exclusive; and that, having failed to take an appeal from the determination of the secretary of state, as evidenced by his letter of transmittal or certificate to the legislature, within five days, the relators are now barred from questioning the sufficiency of the certificate; and that, the legislature having failed to pass the measure as certified, it is incumbent on the respondent to submit it to the voters at the ensuing general election.

In *State ex rel. Case v. Superior Court*, 81 Wash. 623, 143 Pac. 461, Ann. Cas. 1916B, 838, this court, commenting upon the constitutional provisions for the

initiative and referendum and the facilitating statute, said:

"Thus there is strongly suggested, in the language of the constitution and this law, a required liberal construction, to the end that this constitutional right of the people may be *facilitated,* and not hampered by either technical statutory provisions or technical construction thereof, further than is necessary to fairly guard against fraud and mistake in the exercise by the people of this constitutional right."

Guided by this rule, we are not to hamper the processes of initiative legislation by restrictive interpretations, but we are, also, to see that the essential requirements of the law are complied with.

In the constitution as well as in the statute, the fundamental requirement for a valid petition is that it have the required number of signatures of legal voters. Without compliance with this first requisite, there can be no submission of a measure, and it is the duty of the secretary of state to determine and certify to the fact.

As the law stood prior to the 1933 session of the legislature, the responsibility placed upon the secretary of state, with respect to the canvassing of petitions, was less onerous than it became by legislation enacted at that session. Under the prior law, Rem. Rev. Stat., § 5406, provision was made for the checking and certification of initiative and referendum petitions by precinct registration officers. It was provided that every petition, before being filed with the secretary of state, should be filed with the officer having custody of the registration books containing the signatures, addresses, and precincts of the registered voters in the city, town, or precinct where the persons signing the petition claimed to be legal voters. The registration officer was required to compare the signatures, addresses, and precinct numbers with the registration

books and to place his initials in ink opposite the signatures of the persons who were shown to be legal voters, and then to certify, upon the last sheet of the petition, that the signatures so initialed were the signatures of legal voters of the state. Provision was also made for checking and certification by justices of the peace, or other named local officers, of the signatures of persons residing in precincts where registration was not required.

Passing upon this section in its relation to the duty of the secretary of state in respect of the checking of initiative petitions, this court, in *State ex rel. Case v. Superior Court, supra,* held that the secretary of state was without authority, upon the canvass of initiative or referendum petitions, to inquire or decide whether the names signed to the petitions were the signatures of legal voters, and that, when the local certifying officer had decided that the names upon the petition were signatures of legal voters and evidenced his decision by a proper certificate, the decision was final.

By the terms of § 13 of the permanent registration law adopted by the people at the November election in 1932 (chapter 1, Laws of 1933, p. 12, § 13), the voter, when registering with the local registration officer, is required to sign his name upon a card containing information necessary for his identification, and it is made the duty of the registrar of voters to transmit these cards to the secretary of state for filing in his office, together with a certificate that the cards so transmitted are the original cards filed by the voters whose names appear thereon, and that such voters are duly registered in the precincts and from the addresses shown. The cards provided for in this section

" . . . shall be kept on file in the office of the secretary of state, in such manner as will be most convenient for, and for the sole purpose of, checking initiative and referendum petitions and mailing pamphlets

containing constitutional amendments and initiative and referendum measures and arguments for and against the same, and shall not be open to public inspection, or used for any other purposes." Rem. Rev. Stat. (Sup.), § 5114-13 [P. C. § 2321-23].

Chapter 144, Laws of 1933, p. 490, repealed Rem. Rev. Stat., § 5406, and amended § 5411 by requiring that the names of legal voters on petitions be certified in rural precincts until January 2, 1936. By this change in the law, the duty of determining whether the names upon petitions were genuine is transferred from the local registration officers to the secretary, of state, his duty in this respect being governed by the provisions of Rem. Rev. Stat. (Sup.), §§ 5411, 5412 [P. C. §§ 2764, 2765].

It will be noted, by reference to the certificate of the secretary of state, that he reported the number of signers from rural precincts that had been certified by the various registration officers, provision for such certification being then in force.

Now, inquiring into the duty of the secretary of state under Rem. Rev. Stat. (Sup.), § 5411 [P. C. § 2764], we see that he is to "proceed to canvass and count the names of legal voters . . . on such petition," and if, at the conclusion of the canvass and count,

". . . it shall appear that such petition bears the requisite number of names of legal voters, the secretary of state shall transmit a certified copy of such proposed measure to the legislature at the opening of its session together with a certificate of the facts relating to the filing of such petition and canvass thereof."

He is to ascertain the number of names of legal voters on the petition, and the standard manifestly is by comparison with the registration cards in his office certified to him by the local registration officers, in

accordance with the provisions of § 13 of the permanent registration act, providing that these registration cards are deposited with him for the sole purpose of

". . . checking initiative and referendum petitions, and mailing pamphlets containing constitutional amendments, initiative and referendum measures," etc.

That the secretary of state must compare the signatures on the petition, is further evidenced by Rem. Rev. Stat. (Sup.), § 5412 [P. C. § 2765], quoted above, requiring him to keep a record of all names appearing on the petition of persons not registered voters and report them to the prosecuting attorneys.

It is obvious that the respondent's certificate to the legislature did not comply with the requirement of the statute, nor, for that matter, with the provision of the constitution, which, while embodying no specific method for the ascertainment of the fact, requires signatures of the requisite number of legal voters upon the petition. Indeed, the certificate negatives any suggestion of full compliance. After reference to the canvass of signatures from rural precincts, the certificate recites that, of the 81,307 names signed by persons in incorporated towns and cities, 33,188 only have been compared with the identification cards in the office of the secretary of state, leaving 48,119 names unchecked. It also appears that, of the names checked, only 48.6% were found to be the signatures of legal voters. If, of the unchecked signatures, only the same percentage were found to be legal, the petition would have less than the required number of signatures. We refer to this not as controlling upon the issue, but as significant of the tentative and incomplete character of the certificate.

■ Admittedly, then, the certificate of the secretary of state lacked compliance with the statutory requirements and failed to certify to the legislature the primary facts necessary to a valid initiative. But the respondent urges, and the trial court adopted the view, that, notwithstanding this fact, it was incumbent upon the relators, by appropriate court proceedings, within five days to challenge the sufficiency of the certificate. We cannot agree with this view. Rem. Rev. Stat., § 5413 [P. C. § 2766], giving the right of appeal, reads in part:

"Any citizen who shall be dissatisfied with the determination of the secretary of state that the petition contains or does not contain the requisite number of signatures of legal voters may, within five days after such determination, apply to the superior court of Thurston county for a citation. . . ."

The secretary of state made no determination, one way or the other. He sent the measure to the legislature with the petition only partially checked and without a finding on the number of valid signatures. The determination giving the right of an appeal was not made. The relators were not called upon to act at that time. Their interest was in opposition to the measure, not in its promotion. Their interest was affected only when, later, the respondent undertook to place the measure upon the ballot. They come into court now in virtue of their special interest and as citizens and taxpayers to challenge the unauthorized act of the respondent. We are of the opinion that they have the right to do so, and that the judgment of the trial court must be reversed.

In view of the necessity for a speedy determination, a writ of prohibition shall issue directly out of this court, prohibiting the respondent from certifying initiative measure to the legislature No. 5 to county

auditors of the state for printing upon the official ballots at the ensuing general election.

MILLARD, C. J., MAIN, and STEINERT, JJ., concur.

BLAKE, J. (dissenting)—Thus may the constitutional prerogative of the people to initiate legislation be frustrated by the failure of the secretary of state to perform a purely ministerial duty! I dissent.