## MICHIGAN STATE DENTAL SOCIETY *v.* SECRETARY OF STATE.

1. STATUTES—REFERENDUMS.

   In this State the referendum provisions are construed as a concession to an organized minority and a limitation upon the rights of the people (Const. 1908, art. 5, § 1).

2. SAME—SECTIONS OF REFERENDUM PETITIONS—DATES.

   Since the Constitution does not require that a petition to submit a statute under the referendum provision shall be dated, it is unnecessary that each section of such a petition shall have stamped on its face the date it was filed with the county clerk (Const. 1908, art. 5, § 1).

3. OFFICERS—ENDORSEMENT OF FILING DATES ON PAPERS—EVIDENCE —DELIVERY.

   A public officer's indorsement on an instrument of the date when it was filed is not the filing but merely the evidence thereof as the instrument is filed when it is delivered to the officer at his office to be received by him and kept on file.

4. STATUTES—REFERENDUM PETITIONS—FILING—PRESUMPTIONS.

   Petitions for referendum of a statute, containing genuine signatures and meeting all constitutional requirements, will be presumed to have been filed at the same time unless there is evidence to the contrary (Const. 1908, art. 5, § 1).

5. SAME—CIRCULATOR'S AFFIDAVIT—SECTION OF PETITIONS—CONSTITUTIONAL LAW.

   Circulator's affidavit need not appear on each signature page of a section of petition for referendum of a statute where each section consisted of seven pages stapled together, of which several were devoted to entire contents of statute involved and last three contained signatures followed by affidavit referring to "this paper being a section of the petition," the constitutional requirement as to such affidavit for each section being satisfied by a single affidavit for each section (Const. 1908, art. 5, § 1).

6. SAME—REJECTION OF NAMES FOR ILLEGIBILITY.

   Names on a petition filed with the secretary of State for referendum of a statute should be rejected when the signature, place of residence, ward or precinct is illegible (Const. 1908, art. 5, § 1).

7. SAME—SUFFICIENCY OF SIGNATURES.

Where only the given name or only the surname appears in a signature to a petition for a referendum of a statute, the name should be rejected, but when the surname appears in full and the given name by initials only, the signature must be accepted (Const. 1908, art. 5, § 1).

8. SAME—PRINTED SIGNATURES.

Signatures printed by typewriter on a petition for referendum of a statute must be rejected, but signatures appearing in printed handwriting of the signer should be accepted as the word "signature" is comprehensive enough to include the printed name (Const. 1908, art. 5, § 1).

9. SAME—SIGNATURES OF MARRIED WOMEN.

Signatures of married women who sign their husband's given name or initials with the prefix "Mrs." should be accepted on petitions for referendum of a statute in the absence of statutory provisions to the contrary (Const. 1908, art. 5, § 1).

10. SAME—SIGNATURES APPEARING MORE THAN ONCE.

Signatures appearing twice or more upon the same or several sections of a petition for referendum of a statute should be rejected (Const. 1908, art. 5, § 1).

11. SAME—OMISSION TO STATE RESIDENCE.

Signatures on a petition for referendum of a statute must be omitted where the signer omits to add to his signature either his place of residence, the street name or number in cities having street numbers, the ward or the precinct (Const. 1908, art. 5, § 1).

12. SAME—ABBREVIATIONS—DITTO MARKS.

Well-known abbreviations and ditto marks may properly be used in petitions for referendum of a statute (Const. 1908, art. 5, § 1).

13. SAME—DUTIES OF SECRETARY OF STATE ARE MINISTERIAL.

The duties of the secretary of State under the provisions of the Constitution pertaining to referendum petitions are ministerial only, hence he may not conduct investigations to determine the sufficiency of petitions for the referendum of statutes in the absence of constitutional or statutory authority so to do (Const. 1908, art. 5, § 1).

14. CONSTITUTIONAL LAW—REFERENDUM PETITIONS—DETERMINATION OF SUFFICIENCY OF SIGNATURES.

It is for the legislature, not the court, to establish the machinery by which the genuineness of signatures on a petition for referendum of a statute may be determined (Const. 1908, art. 5, § 1).

15. OFFICERS—MINISTERIAL DUTIES—DISCRETION.

The performance of a ministerial duty by a public officer may involve the exercise of some discretion and judgment.

16. STATUTES—REFERENDUM PETITIONS—VALIDITY OF NAMES—DISCRETION OF SECRETARY OF STATE.

Though the secretary of State cannot go behind the face of a petition for referendum of a statute, he can, and should, exercise his honest judgment as to the validity of the names upon the face of the petition so as to reject names which are ridiculous and obviously facetious, such as the absurd names "Charlie potatoes," "jip the blood," "Lefty Louie," "Highy Kababler," and the like (Const. 1908, art. 5, § 1).

17. SAME—CIRCULATION—REJECTION OF NAMES.

The secretary of State must reject any signature on a petition for referendum of a statute where the residence of the signer is given as a city, county or State other than that in which the petition was circulated (Const. 1908, art. 5, § 1).

18. MANDAMUS—STATUTES—REFERENDUM PETITIONS—REQUISITE SIGNATURES.

Mandamus to compel the secretary of State to reject petition for referendum of State dental act is denied where even if the obviously fictitious names were excluded it is not shown that there does not remain more than the requisite number of genuine and acceptable signatures on the petition (Const. 1908, art. 5, § 1; Act No. 122, Pub. Acts 1939).

19. SAME—COSTS—PUBLIC QUESTION.

No costs are allowed in mandamus proceeding primarily involving a matter of public concern.

Mandamus by Michigan State Dental Society and others to compel Harry F. Kelly, Secretary of State, to recanvass petitions for referendum on Act No. 122, Pub. Acts 1939, known as "State Dental Act," and to reject certain sections of said petitions. Submitted June 11, 1940. (Calendar No. 41,145.) Writ denied September 6, 1940.

*Clark, Klein, Brucker & Waples,* for petitioners.

*Thomas Read,* Attorney General, and *Edmund E. Shepherd* and *Andrew De Maggio,* Assistants Attorney General, for respondent.

POTTER, J. Act No. 122, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 6780-21 *et seq.*, Stat. Ann. § 14.629[1] *et seq.*), known as the "State Dental Act," was passed by the 1939 session of the legislature and approved by the governor May 19, 1939. The act sets forth certain minimum requirements for the practice of dentistry and establishes a State board of dentistry with power to adopt further rules and standards for the regulation of the profession. After the passage of the act, but before it became effective, certain petitions were circulated under article 5, § 1, of the Constitution to require the secretary of State to submit the law for approval or rejection at the general election November 5, 1940.

It is undisputed that 80,262 valid signatures were required in order to meet the constitutional requirements and that 97,942 signatures were actually procured, 91,473 of which were from Wayne county. The signatures were submitted in several sections. Each section consisted of seven pages of paper stapled together at the top. On the first page was printed the section number, the petition, and part of Act No. 122, Pub. Acts 1939; on the second, third and fourth sheets was printed the balance of the act; on the fifth and sixth sheets were printed lines for 40 signatures; and on the seventh sheet were printed lines for 20 signatures and the affidavit of the circulator. The county clerk of Wayne county submitted the signatures from Wayne county in three bundles tied together with a cord, each bundle containing several sections of petitions. Only the top section in each of the three bundles had any date of filing stamped thereon by the county clerk, though a letter of transmittal from the county clerk to the secretary of State stated that all sections of the petitions were submitted to him on the same date.

After the sections of petitions had been delivered to the secretary of State, petitioners caused an exhaustive investigation to be made thereof as a result of which petitioners claim there is evidence of wholesale irregularities and gross fraud. It is stated by petitioners that, of the 97,942 signatures procured, less than 25,000 are valid signatures.

Upon respondent's refusal to refrain from certifying Act No. 122, Pub. Acts 1939, for referendum, petitioners filed application for mandamus to compel respondent secretary of State to make a recanvass in accordance with petitioners' claims. Petitioners claim respondent should reject:

(1) All sections of the petition which do not have stamped on the face thereof the date of filing with the county clerk;

(2) Each page of signatures of each section of petitions, viz., pages 5 and 6, which do not contain the circulator's affidavit;

(3) All names (a) where the purported signature of the alleged qualified voter is illegible and not capable of translation; (b) where an illegible marking has been supplied for either the place of residence, the ward, or precinct number of the alleged qualified voter; (c) where only the given name or the surname appears; (d) where the surname is preceded by an initial and not the full given name; (e) where the signature is printed and not written; (f) where a man's name appears with the prefix "Mrs."; (g) where the same signature appears twice or more on the same or several sections of petitions;

(4) All names where the place of residence, or street number, or ward, or precinct does not appear upon the face of the petition;

(5) All names where no such street, or street number, or ward, or precinct in fact exists;

(6) All names where the handwriting is so similar that obviously the same person wrote all the names, or places of residence, or wards, or precincts.

Respondent claims (1) the *filing* of the sections of petitions as required by the Constitution does not demand that the sections actually be dated, but only that they shall be turned over to the county clerk at the same time; (2) it is sufficient if the circulator's affidavit appears at the end of each section of petitions, rather than at the end of each sheet of signatures; (3) the secretary of State's duties are ministerial and he has no power to reject signatures because of apparent similarities in handwriting nor to conduct an investigation to ascertain whether the street, the street number, the ward, or precinct in fact exists. Respondent prays that, if a recanvass should be ordered, this court indicate the rules by which it should be conducted.

Article 5, § 1, became a part of the Constitution in April, 1913. Insofar as material to the present case, it provides:

"The second power reserved to the people is the referendum. No act passed by the legislature shall go into effect until ninety days after the final adjournment of the session of the legislature which passed such act. * * *

"Upon presentation to the secretary of State within ninety days after the final adjournment of the legislature, of a petition certified to as herein provided, as having been signed by qualified electors equal in number to five per cent. of the total vote cast for all candidates for governor at the last election at which a governor was elected, asking that any act, section or part of any act of the legislature, be submitted to the electors for approval or rejection, the secretary of State, after canvassing such petition as above required, and the same is found

to be signed by the requisite number of electors, shall submit to the electors for approval or rejection such act or section or part of any act at the next succeeding general election; and no such act shall go into effect until and unless approved by a majority of the qualified electors voting thereon. * * *

"Any initiative or referendum petition may be presented in sections, each section containing a full and correct copy of the title and text of the proposed measure. Each signer thereto shall add to his signature, his place of residence, street and number in cities having street numbers, and his election precinct. Any qualified elector of the State shall be competent to solicit such signatures within the county in which he is an elector. Each section of the petition·shall bear the name of the county or city in which it is circulated, and only qualified electors of such county or city shall be competent to sign such section. Each section shall have attached thereto the affidavit of the person soliciting signatures to the same, stating his own qualifications and that all the signatures to the attached section were made in his presence, that each signature to the section is the genuine signature of the person signing the same, and no other affidavit thereto shall be required. Such petitions so verified shall be prima facie evidence that the signatures thereon are genuine and that the persons signing the same are qualified electors.

"Each section of the petition shall be filed with the clerk of the county in which it was circulated, but all said sections circulated in any county shall be filed at the same time. Within twenty days after the filing of such petition in his office, the said clerk shall forward said petition to the secretary of State. Within forty days from the transmission of the said petition to the secretary of State, a supplemental petition identical with the original as to the body of the petition but containing supplemental

names, may be filed with the county clerk, and such supplemental petition shall be forwarded to the secretary of State by said clerk within ten days after the filing of the same."

Referendum provisions have been adopted in 21 jurisdictions.* These amendments have met with varying success in practical operation. 43 Harvard Law Review, p. 813 (note); Oberholtzer, "The Referendum in America." Many jurisdictions interpret referendum provisions liberally, holding that the referendum is an exercise of powers reserved to the people. *Brownlow* v. *Wunsch,* 103 Col. 120 (83 Pac. [2d] 775); *State, ex rel. Carson,* v. *Kozer,* 108 Ore. 550 (217 Pac. 827); *Wood* v. *Byrne,* 60 N. D. 1 (232 N. W. 303); *Ford* v. *Mitchell,* 103 Mont. 99 (61 Pac. [2d] 815); *State, ex rel. Howell,* v. *Superior*

---

* South Dakota (1898) Const. art. 3, § 1.
  Utah (1895, amended 1900) Const. art. 6, § 1 (2).
  Oregon (1857, amended 1906) Const. art. 4, §§ 1, 1a.
  Nevada (1904) Const. art. 19, §§ 1–3.
  Montana (1906) Const. art. 5, § 1.
  Oklahoma (1907) Const. art. 5, §§ 1–5.
  Maine (1908) Const. art. 31.
  Missouri (1908) Const. art. 4, § 57.
  Arkansas (1874, amended 1920 and 1925) Const. am. 7, § 1 (See
    *Brickhouse* v. *Hill,* 167 Ark. 513 [268 S. W. 865]).
  Colorado (1910) Const. art. 5, § 1.
  Arizona (1911) Const. art. 4, § 1.
  New Mexico (1911) Const. art. 4, § 1.
  California (1911) Const. art. 4, § 1.
  Nebraska (1912, amended 1920) Const. art. 3, §§ 1–4.
  Washington (1912) Const. am. 7, art. 2, § 1.
  Idaho (1912) Const. art. 3, § 1.
  Ohio (1912, 1918) Const. art. 2, §§ 1–1g.
  Michigan (1913) Const. art. 5, § 1.
  North Dakota (1914, amended 1918) Const. art. 2, § 25.
  Mississippi (1914) (Declared unconstitutional, *Power* v. *Robertson,*
    130 Miss. 188 [93 South. 769]).
  Maryland (1915) Const. art. 16, §§ 1–6.
  Massachusetts (1918) Const. am. 48.

*Court,* 97 Wash. 569 (166 Pac. 1126).  Other juris-dictions, including Michigan, have seen in the ref-erendum a concession to an organized minority and a limitation upon the rights of the people.  *Ferle* v. *Parsons,* 210 Mich. 150; *Ohio Valley Electric R. Co.* v. *Hagerty,* 14 Ohio .App. 398.  See, also, *Ley* v. *Dominguez,* 212 Cal. 587 (299 Pac. 713).

We take up the issues raised by petitioners:

1. It is not necessary that each section of the petition shall have stamped on the face thereof the date of filing with the county clerk.  The Constitu-tion does not demand that the petition be *dated.*  It prescribes only that the petitions shall be "filed at the same time."

"It is suggested in a brief by *amicus curiae* that the petitions had not been filed at all, inasmuch as the secretary of State had refused to mark them as filed.  We do not concur in this view.  It is settled law that, while it is proper for an officer whose duty it is to receive and file an instrument in writing to indorse thereon the date of filing when he receives the instrument, such indorsement is not the filing, but is merely an evidence of filing, and that the instrument is filed when it is delivered to the officer at his office to be received by him and kept on file."  *Westbrook* v. *McDonald,* 184 Ark. 740, 752 (43 S. W. [2d] 356).

Petitions containing genuine signatures and meet-ing all the constitutional requirements would be re-jected in cases where the county clerk neglected to stamp thereon the date of filing if the view of peti-tioners prevailed.  Unless evidence is introduced to the contrary, there is a presumption that the peti-tions were filed at the same time.

2. The circulator's affidavit states:

"The undersigned, being duly sworn, deposes and says that he was, while circulating this paper and

he now is, a qualified elector of the ........... of
................, county of .............., State
of Michigan; that this paper being a section of a
petition for referendum of Act No. 122 of the Public
Acts of 1939 (House Enrolled Act 77), was circu-
lated by him in only the ................... of
.................., county of ...............
in said State; that he solicited the signatures to this
section; that all of the signatures to this section
were made in his presence and that each signature
to this section is the genuine signature of the person
signing the same."

It is petitioners' argument that the words "this
paper" refer only to the seventh sheet of twenty
names and do not include the fifth and sixth sheets
of 40 names each to which the seventh sheet was
stapled. Petitioners claim that the circulator's af-
fidavit is the fundamental basis upon which the
genuineness of the signatures rests, and that it
would open the door to fraud if the affidavit on page
seven could be made to refer to other pages which
might later be stapled thereto. Unlike the Constitu-
tions of some other jurisdictions, the Michigan Con-
stitution does not require a circulator's affidavit
upon each page of signatures but only upon "each
section." Similar in this respect to the Michigan
Constitution is the Arkansas Constitution, am. 7, re-
quiring a circulator's affidavit upon "each part"
of a petition. In *Blocker* v. *Sewell*, 189 Ark. 924
(75 S. W. [2d] 658), certain taxpayers challenged
the sufficiency of petitions, claiming the affidavit was
insufficient because it did not appear upon each page
of signatures. The court said:

"One affidavit to each of the parts is all Amend-
ment No. 7 calls for, and there is no requirement
that each page of the said petition shall have at-
tached to it a separate affidavit, though, of course,

if a part consisted of only one page, as circulated by one solicitor, then the person circulating the petition would make the affidavit as required. A part, however, may consist of many pages circulated by one person.''

See, also, *Reeves* v. *Smith,* 190 Ark. 213 (78 S: W. [2d] 72) ; *State ex rel.* v. *Olcott,* 62 Ore. 277 (125 Pac. 303).

As used in our Constitution, ''each section'' of a petition is a group of several pages fastened together and containing a full and correct copy of the act, signatures, and the circulator's affidavit, whereas the petition itself is the sum total of all the sections of a petition. Petitioners' argument is that the words ''this paper'' mean *this single sheet of paper.* A fair and reasonable interpretation of the affidavit indicates that the words have a broader meaning and refer to the entire section. Thus the affidavit says, ''this paper being a section of a petition,'' and thereafter uses the words ''this section.'' The affidavit itself shows that the words ''this paper'' and ''this section'' are used as synonyms, and, since the affidavit appears upon each section, the constitutional requirement is satisfied.

3. Respondent admits he should reject names when the signature, the place of residence, the ward, or the precinct is illegible. This is the correct rule, although there is some authority to the contrary. *State ex rel.* v. *Olcott,* 67 Ore. 214 (135 Pac. 902). Petitioners and respondent agree that where only the given name or only the surname appears the signature should be rejected. When the surname appears in full and the given name by initials only, the signature must be accepted. *Rice* v. *People,* 15 Mich. 9 ; 58 C. J. § 6, p. 721. Signatures printed by typewriter must be rejected, but signatures appearing in printed handwriting of the signer should be

accepted. The word *signature* is comprehensive enough to include the printed name. 5 Words & Phrases (5th Ed.), p. 361. Signatures of married women who sign their husband's given name or initials with the prefix "Mrs." should also be accepted. *Ley* v. *Dominguez, supra*. Our Constitution does not prescribe what form the signatures must take and, in the absence of any statute to the contrary, the prefix "Mrs." followed by the husband's name is sufficient. But, signatures appearing twice or more upon the same or several sections of a petition should be rejected. *O'Brien* v. *Pyle*, 51 S. D. 385 (214 N. W. 623); *In re Referendum Petition No. 35*, 78 Okla. 47 (186 Pac. 485). The few instances in which father and son will have identical names are outnumbered by the rather numerous instances in which the same person signs more than one petition.

4. Signatures must be omitted where the signer omits to add to his signature either his place of residence (*Elkins* v. *Milliken*, 80 Col. 135 [249 Pac. 655]); the street name or number in cities having street numbers (*Miller* v. *Armstrong*, 84 Col. 416 [270 Pac. 877]); the ward, or precinct (*Gerth* v. *Dominguez*, 1 Cal. [2d] 239 [34 Pac. (2d) 135]; *Mayock* v. *Kerr*, 216 Cal. 171 [13 Pac. (2d) 717]). See, also, *Shields* v. *Wells*, 65 S. D. 552 (276 N. W. 246); *Halgren* v. *Welling*, 91 Utah, 16 (63 Pac. [2d] 550); *Morford* v. *Pyle*, 53 S. D. 356 (220 N. W. 907).

To well-known abbreviations and ditto marks, there can be no objection. *Thompson* v. *Secretary of State*, 192 Mich. 512; *Halgren* v. *Welling, supra*.

5 & 6. Petitioners' strongest claim to fraud and irregularity is that many names are followed by streets, street numbers, wards, or precincts which actually do not exist at all, and that many, if, indeed, not a majority, of the names are written by the same persons. Petitioners ask mandamus to compel

the secretary of State to conduct an investigation and to reject all names where there is similarity in handwriting or nonexistent streets, street numbers, wards, or precincts. Whether the secretary of State can make an independent investigation and go behind the face of the petition to test the sufficiency of the signatures depends upon whether the secretary of State is given quasi-judicial or ministerial powers. The overwhelming weight of authority is that the duties of the secretary of State are ministerial only and that he may not conduct an independent investigation to determine the genuineness of the signatures. *Thompson* v. *State, supra; Fleming* v. *Fones,* 230 Mo. App. 1147 (91 S. W. [2d] 208) ; *State, ex rel. Kemper,* v. *Carter,* 257 Mo. 52 (165 S. W. 773) ; *State, ex rel. Ayres,* v. *Amsberry,* 104 Neb. 273 (177 N. W. 179, reversed on rehearing on other grounds [178 N. W. 822]) ; *Coghlan* v. *Cuskelly,* 62 N. D. 275 (244 N. W. 39) ; *State, ex rel. Herbert,* v. *Mitchell,* 136 Ohio St. 1 (22 N. E. [2d] 907) ; *State, ex rel. McCrehen,* v. *Brown,* 108 Ohio St. 454 (141 N. E. 69) ; *State ex rel.* v. *Olcott,* 62 Ore. 277 (125 Pac. 303) ; *Kellaher* v. *Kozer,* 112 Ore. 149 (288 Pac. 1086) ; *State, ex rel. Case,* v. *Superior Court,* 81 Wash. 623 (143 Pac. 461, Ann. Cas. 1916 B, 838) ; 59 C. J. § 278, p. 706. Only when the Constitution itself (Arkansas Constitution, am. 7; North Dakota Constitution, art. 2, § 25; *Power* v. *Robertson,* 130 Miss. 188 [93 South. 769]), or a statute (*Associated Industries* v. *Oklahoma Tax Commission,* 176 Okla. 120. [55 Pac. (2d) 79] ; *Miller* v. *Armstrong, supra; State, ex rel. Evich,* v. *Superior Court,* 188 Wash. 19 [61 Pac. (2d) 143]), expressly states that the secretary of State shall determine the sufficiency of the petition is the secretary of State held to have quasi-judicial power. The Constitution (1908), art. 5, § 1, does not permit the secretary of State to make an independent investigation.

"It is averred by relators that the referendum petition was the subject of many gross frauds and irregularities before it was finally received and placed on file in the office of the secretary of State; that people were allowed to sign it who were not electors, and that many names were appended to it by interested parties without the knowledge or consent of those whose names were so appended; and the serious consequences to the State are pointed out if it should be held that the secretary is required to act upon such petition without making an investigation into the alleged frauds and irregularities. The gravity of these charges is fully recognized, but the law must be construed as it stands. It is clear that the secretary of State is not given authority to enter upon such an investigation. This was practically held in *Thompson* v. *Secretary of State, supra,* and we are obliged to adhere to the view taken in that opinion. The duties charged upon the secretary by the referendum section of the Constitution are purely ministerial, and his action must be based upon the face of the petition as it is received at his office. Other evils of a serious nature might result if initiative and referendum petitions could be held up pending investigations of uncertain length, and those evils were undoubtedly in mind when the constitutional amendment was framed and adopted without making provisions for such an investigation." *Thompson* v. *Secretary of State, supra,* p. 521.

The Constitution (1908), art. 17, § 2, provides that amendments may be proposed to the Constitution by petitions signed by not less than 10 per cent. of the qualified voters of the State. Article 5, § 1, and article 17, § 2, were proposed at the same session of the legislature, adopted at the same general election, and define the duties of the secretary of State in almost identical language. The duties of the secretary of State under article 17, § 2, have been held

to be ministerial only. *Scott* v. *Secretary of State,* 202 Mich. 629; *Hamilton* v. *Secretary of State,* 212 Mich. 31. Petitioners urge that this court should reexamine the language of *Thompson* v. *Secretary of State, supra,* for, if the secretary of State is not given the power to make an investigation, organized minorities may perpetrate forgery and fraud with impunity.

When the secretary of State is given the power to conduct investigations, particularly when the legislature has not provided machinery for a speedy determination of the sufficiency of the petitions, long and tedious arguments unduly delay the presentation of the measures to the electorate. Ewing, "Sufficiency Certification of Initiative Signatures in Oklahoma," 31 American Political Science Review, p. 65; *Associated Industries* v. *Oklahoma Tax Commission, supra.* It is significant that, out of the 21 jurisdictions where the referendum has been adopted, only two States by Constitution, and two by statute, have given the secretary of State quasi-judicial power. Arkansas Constitution, am. 7; North Dakota Constitution, art. 2, § 25; Oklahoma Compiled Statutes 1921, § 6631; 3 Colorado Statutes 1935, chap. 86, § 6. The overwhelming majority of the States provide by statute that either the county clerks, the circuit courts, or the State ballot commission shall test the genuineness of the petition.*

---

\* Sufficiency of petitions determined by circuit court:
    Arizona, Struckmeyer's Revised Code (1928), § 1744;
    Nebraska, Compiled Statutes (1929), § 32–1905;
    Missouri, 2 Revised Statutes (1929), § 10705;
    Oregon, 2 Code Annotated (1930), §§ 36–2004, 36–2005.
  Sufficiency of petitions determined by county clerks:
    Ohio, Baldwin's Code (1934), §§ 4785–175—4785–183;
    Montana, 1 Revised Codes (1935), chap. 13, § 101;
    Washington, 2 Remington's Compiled Statutes (1922), §§ 5406–5414; duty transferred to secretary of State to whom county clerks send registration lists by Laws of 1933, chap. 144. See

In order that there will not be undue delay and that the sufficiency of the petition will be speedily determined, the statutes provide that hearings must be commenced within a certain time, finished as quickly as possible, and that either party may apply to the Supreme Court where the case is to be advanced upon the docket and disposed of with as much speed as is practical. 2 Oregon Code Annotated 1930, §§ 36–2004, 36–2005; 3 Colorado Statutes 1935, chap. 86, § 6; Struckmeyer's Revised Code of Arizona 1928, § 1744; 2 Missouri Revised Statutes 1929, § 10705; Nebraska Compiled Statutes 1929, § 32–1905; Baldwin's Ohio Code 1934, §§ 4785–175—4785–183. It is for the legislature, and not the court, to establish the machinery by which the genuineness of signatures may be determined.

"It is also claimed by relators that upon some of the sections of the petition there are many names, places of residence, and voting precincts all apparently in the same handwriting, and that from this it should be concluded that the names were written thereon fraudulently, and that they should be rejected from the canvass. An examination of the petition lends some plausibility to this claim; but similarity of handwriting is too much a matter of opinion, and the whole proposition is too indefinite, to be acted upon in such a canvass as the secretary of State is required to make." *Thompson* v. *Secretary of State, supra.*

*State, ex rel. Evich,* v. *Superior Court,* 188 Wash. 19 (61 Pac. [2d] 143).

Sufficiency of petitions determined by State ballot commission: Massachusetts, Const., art. 48; General Laws (Tercentenary Ed. [1932]), chap. 53, § 22A. See Report of Special Committee on Initiative and Referendum, 17 Massachusetts Law Quarterly (Feb. 1932 Supplement).

Question of sufficiency of petitions asking for referendum upon State dental act in Maryland disposed of upon other grounds, *Phifer* v. *Diehl,* 175 Md. 364 (1 Atl. [2d] 617).

The performance of a ministerial duty may involve the exercise of some discretion and judgment. *Scott* v. *Secretary of State, supra; Hamilton* v. *Secretary of State, supra; State, ex rel. Halliburton,* v. *Roach,* 230 Mo. 408 (130 S. W. 689); *State, ex rel. Laird,* v. *Hall,* 49 N. D. 11 (186 N. W. 284). Though the secretary of State cannot go behind the face of the petition, he can, and should, exercise his honest judgment as to the validity of the names upon the face of the petition so as to reject names which are ridiculous and obviously facetious. Such absurd names as "Charlie potatoes," "jip the blood," "Lefty Louie," "Highy Kababler," and the like, which appear in these petitions, should be omitted from the canvass. The secretary of State must also reject any signature where the residence of the signer is given as a city or county or State other than that in which the petition was circulated.

The foregoing portion of this opinion was prepared and submitted to the members of this Court by the late Justice POTTER; and it is adopted by the Court. The following is added PER CURIAM. Under the record in this proceeding it appears with reasonable certainty that checking the petition filed in accordance with the rules hereinbefore noted would result in there still being sufficient signatures to justify the secretary of State in certifying for referendum Act No. 122, Pub. Acts 1939, to the electors at the next general election, November 5, 1940. At least petitioners have not established the fact or presented a record from which there is reasonable cause to believe that checking the petition in accordance with our holding herein would disclose that the required minimum number of signatures does not appear thereon; and in the absence of such a showing mandamus should not issue. In this connection it may be noted that the minimum requisite number of signatures is 80,262, that the petition presented

purported to bear approximately 98,000 signatures, and of these the secretary of State determined 88,941 were genuine and acceptable. It thus appears that there are signatures in excess of the minimum requirement of more than 8,600 according to the determination of the secretary of State. Even if it be assumed that the secretary of State did not exclude such obviously fictitious names as ''jip the blood,'' et cetera, still it is a fair inference from this record that exclusion of signatures of this character would not result in a deficiency of the requisite number of signatures; at least the contrary does not appear. Under the record we would not be justified in granting any of the relief sought by petitioners.

The petition for mandamus is denied; but no costs will be allowed since the proceeding primarily involves a matter of public concern.

BUSHNELL, C. J., and SHARPE, CHANDLER, NORTH, MCALLISTER, WIEST, and BUTZEL, JJ., concurred in the supplemented opinion.