483 A.2d 348

**CITY OF TAKOMA PARK, Maryland et al.**

v.

**CITIZENS FOR DECENT GOVERNMENT et al.**

**No. 92, Sept. Term, 1984.**

Court of Appeals of Maryland.

Sept. 14, 1984.

Opinion Nov. 8, 1984.

Motion for Reconsideration Denied Dec. 21, 1984.

Charles Lister and John P. Diuguid, Washington, D.C. (Susan C. Silber, Thomas J. Gagliardo, Anne DeNovo, Takoma Park, Joan D. Klein, Douglas R. Davies, Covington & Burling, Washington, D.C., and Leonard Graff, San Francisco, Cal., on the brief of counsel), for appellants.

Steven Campen and Barry H. Helfand, Rockville (Campen & Silver, Rockville, on the brief), for appellees.

## ORDER

PER CURIAM.

For reasons to be stated in an opinion later to be filed, it is this 14th day of September, 1984

ORDERED, by the Court of Appeals of Maryland, a majority of the Court concurring, that the judgment of the Circuit Court for Montgomery County ordering that a proposed question be printed on the General Election ballot be, and it is, hereby reversed with costs and the case is remanded to that court for the passing of an order enjoining the printing of such question on said ballot; and it is further

ORDERED that the mandate shall issue forthwith.

Argued before SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., RICHARD P. GILBERT, Chief Judge of the Court of Special Appeals and JAMES C. MORTON, Jr., Associate Judge of the Court of Special Appeals (retired), specially assigned.

SMITH, Judge.

We shall here give the reasons for our reversal by per curiam order on September 14, 1984, of a trial judge's decision that a proposed question be printed on the general election ballot in Montgomery County.

Montgomery County is a charter county under Md. Const. art. XI–A. Maryland Code (1957, 1981 Repl.Vol.) Art. 25A, § 5 grants charter counties broad powers to enact local legislation. On February 13, 1984, the County Council enacted Bill 65–83 which modified Montgomery County Code (1972, 1977 Repl.Vol.) Ch. 27 dealing with "Human Relations and Civil Liberties." This legislation prohibited discrimination in employment, housing and public accommodations on the basis of sexual orientation. It further prohibited housing discrimination against families with children. The bill was signed by the County Executive on February 24, 1984. It became effective on May 24, 1984.

We held in *Ritchmount Partnership v. Board,* 283 Md. 48, 64, 388 A.2d 523, 533 (1978),[1] that Const. art. XI–A, § 1

---

**1.** In *Ritchmount Partnership v. Board,* 283 Md. 48, 388 A.2d 523 (1978), Judge Levine observed for the Court:

"Subsequent to the zoning referendum in dispute here, the General Assembly enacted Chapter 83 of the Laws of 1976, now codified

conferred upon the citizens of a charter county the right to reserve unto themselves by express charter provision the power to refer legislation enacted by a county council. Montgomery County Charter § 114 provides, with exceptions not pertinent here, that any legislation enacted by the County Council shall be submitted to a referendum of the voters upon petition of 5% of the qualified voters of the County. Section 115 provides in pertinent part:

"Any petition to refer legislation to the voters of the county shall be filed with the board of supervisors of elections within seventy-five days following the date on which the legislation shall become law. When a referendum petition has been filed, the legislation to be referred shall not take effect until thirty days after its approval by a majority of the qualified voters of the county voting thereon."

Montgomery County Code (1972, 1977 Repl.Vol.) Art. III, § 16-4 specifies that "[t]he board of supervisors of elections of the county, established by public general law, shall constitute a special board of election supervisors for the conduct of any referendum on any public local law, or part thereof, as provided in section 115 of the Charter ...." It is then provided:

"Sec. 16-5. Petition-Form.

"A petition for referendum on any legislation, or part thereof, enacted by the council and subject to referendum

as Code (1957, 1973 Repl.Vol., 1977 Cum.Supp.) Art. 25A, § 8, which amended the Express Powers Act in an attempt to give statutory support to the exercise of the right of referendum·by citizens of chartered counties." 283 Md. at 54, n. 5, 388 A.2d at 527–28, n. 5. In the view which we take of this case we have no need to decide the issue which the note in question specified we did not decide in *Ritchmount,* whether there was a "need for such legislation," and we also have no need to decide whether in this case the provisions of Art. 25A pertaining to referendum of parts of laws have any bearing on Montgomery County's charter or code provisions. We likewise do not have before us the issue of the validity of Code (1957, 1981 Repl.Vol.) Art. 25A, § 8.

under the charter, shall be composed of one or more sheets, each in substantially the following form:

## REFERENDUM PETITION

"We, the undersigned registered voters of Montgomery County, Maryland, do hereby petition for a referendum vote on [the provisions (identifying them briefly) of] the Act entitled 'An Act [inserting title],' enacted by the County Council for Montgomery County, Maryland, at its [month and year] legislative session."

At about the same time the bill in question became law a petition signed by a number of voters was filed with the board of supervisors of elections. That petition recited:

"We the undersigned registered voters of Montgomery County, Maryland, do hereby petition for a referendum vote on certain provisions of Bill No. 65–83 enacted by the Montgomery County Council on 2/14/84 to amend chapter 27 of the Montgomery County Code 1972, as amended. Those certain provisions hereby petitioned for a referendum vote are any mention or definition within the bill of the terms, 'sexual orientation, homosexuality, heterosexuality, or bisexuality.' "

Bill 65–83 recited in its title that it was "AN ACT to amend Article I, Title 'Commission on Human Relations' of Chapter 27, Title 'Human Relations and Civil Liberties' of the Montgomery County Code 1972, as amended, by repealing and reenacting, with amendments" a number of sections thereafter specified. The title to the act covers something in excess of one page of double spaced typing in elite type.

Under date of June 28 the election supervisors informed the County Council that the petitions filed contained the requisite number of signatures and thus the supervisors "certifie[d] that said petition on Council Bill 65–83 is valid, requiring that a referendum be held thereon."

On July 2 the attorney to the election supervisors advised the president of the County Council:

"As attorney for the Montgomery County Board of Supervisors of. Elections, I would like to make it clear that in certifying the petition to you, neither I nor the Board have passed upon the legal sufficiency or form of the petition, it having been the view of the Board, based upon past practice, that its function was that of verifying the required number of signatures of registered voters."

On July 13 the County Attorney of Montgomery County addressed a letter to the chairman of the board of supervisors of elections in which he referred to the July 2 letter and said that "as a result of [that] letter and in light of the questions that have been raised concerning the referendum petition it appear[ed] to [him] that the Board should undertake a review of the legal sufficiency and form of those petitions."

The Board responded on July 26 with a letter to the president of the County Council in which it advised, "After due deliberations the Board determined that the aforementioned petition does not comply with relevant legal requirements as to form," and that the Board "by unanimous vote determined that the Petition in question should not be certified as a valid petition requiring referendum."

On August 1, 1984, Citizens for Decent Government and two individuals, all sponsors of the petitions in question, filed a complaint against the supervisors of elections, the County Council, and the County Executive. The complaint prayed: that the defendants "be temporarily and permanently enjoined from withdrawing their certification of Plaintiffs' petition and from recognizing and enforcing the challenged provisions of Bill 65–83 until a referendum vote has been conducted"; that "the Defendant Board's action in withdrawing certification of Plaintiff's [sic] petition be declared void and that the Defendants, and each of them, be mandatorily enjoined, by Writ of Mandamus [sic] to perform their respective functions in placing the petitioned issue on the November, 1984 ballot, pursuant to County law"; and "[t]hat declaratory relief be granted Plaintiff [sic] with regard to the legal sufficiency of its petition, both as to

form and content ...." On August 22 appellants City of Takoma Park, Robert M. Coggin, and the Suburban Maryland Lesbian/Gay Alliance were permitted to intervene as defendants.

Plaintiffs and defendants moved for summary judgment. The motion of the plaintiffs was granted and that of the defendants was denied. The trial judge held: (1) "the Board [of Supervisors of Elections] exceeded its authority when it reversed itself"; (2) the Montgomery County Code permits challenges to selected portions of proposed legislation; and (3) the form of the petition complied with the requirements of the County Code, "[t]here [being], in the Court's opinion, more than adequate notice to persons who were asked to sign the petition." On August 30 an order was entered directing "that the Board shall certify as 'valid,' to the County Council and the County Executive, the Petition seeking referendum of portions of Bill No. 65–83"; "that the County Executive and the County Council shall otherwise comply with the directions of the County Charter and the County Code upon receipt of the validation notice from the Board," and "that the provisions of Bill No. 65–83 shall stand suspended until the matter has been presented to the voters at the next general election, and a result thereof is reported as provided by the County Charter and Code ...." An immediate appeal was entered to the Court of Special Appeals. We issued a writ of certiorari prior to hearing in the intermediate appellate court.

Considerable attention was directed in the trial court and more in brief and argument before us to the issue of whether the board of supervisors of elections had the right to reconsider its opinion. That interesting academic question was irrelevant once an action for declaratory judgment was brought and the trial court was requested to determine whether the petition was a proper one to go on the ballot. It then became necessary that the trial court pass upon and adjudicate the issues raised. *Mauzy v. Hornbeck*, 285 Md. 84, 90–91, 400 A.2d 1091, 1095 (1979), and the numerous cases there cited. One of the cases there cited is *Woodland*

*Beach Ass'n v. Worley,* 253 Md. 442, 252 A.2d 827 (1969), where Judge Singley said for the Court:

"As Judge (later Chief Judge) Prescott indicated in *Shapiro* [*v. County Comm.,* 219 Md. 298, 303–04, 149 A.2d 396, 398–99 (1959)], if there is a justiciable issue presented by the bill of complaint or declaration seeking declaratory relief under the Act, a declaration should be given even if it is not the declaration sought by the plaintiff and, indeed, is entirely or partially contrary to the theory of the plaintiff on which declaratory relief is sought." 253 Md. at 448, 252 A.2d at 830.

In the view we take of this case the only issue with which we need concern ourselves is the sufficiency of the referendum petition. The proponents of referendum argue that the petition here is in substantial compliance with the requirements of Montgomery County Code Art. III, § 16–5. They contend they went beyond the requirement of a brief description of the challenged provision by including the exact language. They assert that "[t]he petition ... stated the only viable identifying 'title' to the legislation, namely 'Bill No. 65–83.'" They contend that they "cannot be held accountable for the County Council's failure to properly entitle the Bill."

We have discussed publicity in a *post*-election consideration of a referred proposal. This has concerned itself with whether a proposition was properly advertised and thus whether the citizenry were properly informed before voting. We summarized this in *Pickett v. Prince George's County,* 291 Md. 648, 436 A.2d 449 (1981):

"It will be seen from these cases that when the Constitution has prescribed an exact method to be followed before such an important item as incurring a debt by a county for the benefit of others may be accomplished, deviation from the prescribed notice will not be permitted. When the court considers, prior to an election, an attempt to prevent the statute from going into force by use of a referendum petition, there must be strict compliance with the prerequisite of such suspension. On the other hand,

in an effort not to thwart the will of the people, in a postelection challenge, the fact that the question on the ballot referred to improvements of roads rather than streets, that although an election was well publicized the notice was not in the precise manner required, or that some forbidden place such as a bowling alley was used as a polling place will not invalidate the statute under consideration." 291 Md. at 659, 436 A.2d at 455.

In *Ferguson v. Secretary of State,* 249 Md. 510, 240 A.2d 232 (1968), appellants sought a writ of mandamus after the Secretary of State declined to certify a petition that failed to state by affidavit that signers were registered voters. The Court said:

"It is clear from the language of Section 4 of Article XVI that it is mandatory that an affidavit be attached to each of the several papers making up the petition for referendum of the person procuring the signatures that 'of the said person's *own personal knowledge*' (1) every signature on the paper is genuine and bona fide, and (2) that the signers are registered voters of the State and City of Baltimore or county as set opposite their names. Although the affidavit in the present case fully complies with the requirements of Section 4 as to the first mandatory requirement, it clearly fails in regard to the second mandatory requirement, i.e., to state that of the affiant's personal knowledge the signers are registered voters of the State and City of Baltimore or County as set opposite their names." 249 Md. at 515, 240 A.2d 234. (Emphasis in original.)

The Court held:

"[T]his Court cannot by construction eliminate a mandatory provision deliberately adopted by the General Assembly requiring that the affidavit in regard to the signer's registration be made on the affiant's personal knowledge. See *Buchholtz v. Hill,* 178 Md. 280, 286, 13 A.2d 348, 351 (1940). If the burden is too heavy, the remedy is by an appropriate amendment to Article XVI." 249 Md. at 517, 240 A.2d at 236.

In *Tyler v. Secretary of State*, 229 Md. 397, 184 A.2d 101 (1962), the Court had before it the question of "the effect . upon a referendum petition of the falsity, in part, of the statement in the accompanying affidavit of the circulator, made in the form prescribed by Section 4 of Article XVI of the Maryland Constitution, that the signers of the petition were registered voters of the State and County, as set opposite their names." In the course of that opinion the Court said:

"While the principle that provisions governing referendum petitions are to be liberally construed is generally accepted, it has been pointed out in *People v. Kelly*, 294 Mich. 503, 293 N.W. 865 [ (1940) ], that certain jurisdictions, including that state, have adopted the view that the referendum is a concession to an organized minority and a limitation upon the rights of the people.

"The exercise of the right of referendum is drastic in its effect. The very filing of the petition, valid on its face, suspends the operation of any of a large class of legislative enactments and provides an interim in which the evil designed to be corrected by the law may continue unabated, or in which a need intended to be provided for, may continue unsatisfied. *Sun Cab Co. v. Cloud*, 162 Md. 419, 159 A. 922 [ (1932) ]; *First Continental v. Director*, 229 Md. 293, 300, 183 A.2d 347 [ (1962) ]; cf. *State ex rel. McNary v. Olcott*, 62 Or. 277, 125 P. 303 [ (1912) ].

"We believe that it is clear, in any case, that the stringent language employed in Section 4 of the Article shows an intent that those seeking to exercise the referendum in this State must, as a condition precedent, strictly comply with the conditions prescribed. *Beall v. State*, 131 Md. 669, 678, 103 A. 99 [ (1917) ]; *Headley v. Ostroot*, [76 S.D. 246,] 76 N.W.2d 474 [ (1956) ]; and *Dawson v. Meier* (N.Dak.), 78 N.W.2d 420 [ (1956) ]. This construction is reinforced by the history of Chapter 673 of the Acts of 1914." 229 Md. at 402, 184 A.2d at 103–04.

More recently, in *Gittings v. Bd. of Sup. of Elections*, 38 Md.App. 674, 382 A.2d 349 (1978), the Court of Special Appeals was faced with a situation where the initial number of signatures filed with petitions was sufficient for a grace period for the filing of additional signatures, but when the board of supervisors of elections examined the petitions they found enough invalid signatures to pull the total below the required number. The appellants urged the Court of Special Appeals "that 'the court should have granted the summary judgment in favor of the plaintiff against the defendant for reasons of equity.'" The intermediate appellate court ruled against such a contention. Judge Liss concluded the opinion for the court by stating:

"It is understandably disappointing to the residents of Baltimore County who sought to petition this issue to referendum that they are foreclosed by this decision from an opportunity to submit the issue to the electorate of the county. However, where a group of the citizens of the county seeks to challenge a decision made by the lawfully designated representatives of the entire body politic, they must strictly adhere to those provisions of the law which grants to them the concession of the referendum. Where, as in this case, they fail to meet the Constitutional or statutory requirements which authorize the exercise of the privilege granted, the proposed referendum must fail." 38 Md.App. at 680–81, 382 A.2d at 353.

■ Despite the contentions of the appellees here, the referendum petition did not set forth the title of the act in question. We have already pointed out that the title covered in excess of a page. The petition fails to inform the voters precisely what portions of the act the petition sponsors proposed for deletion. As read literally the petition called for removal from the act of the definitions of "sexual orientation," "homosexuality," "heterosexuality," *or* "bisexuality." Which of those definitions was to be deleted? The petition does not tell us. In addition, read literally, the petition called for deletion of any mention of certain of the

terms, but not necessarily all of them. Again, we are left to our imagination. Moreover, when the petition calls for referendum on any "mention" of those terms we know not whether it simply meant that those terms should be excised from certain sections of the act or whether, as we suspect, it was the intention of the petition sponsors to have the voters decide whether to adopt certain sections of the act where those terms were used.

■■■ We believe it is the intent of Montgomery County Code Art. III, § 16–5 that potential voters be reasonably advised of what act or part of an act enacted by the County Council is to be suspended in its operation pending decision of the voters at the succeeding general election. No amount of publicity could supply that information in this kind of a *pre*-election setting. Our cases concerning *post*-election challenges have considered publicity, not in the context of information to a signer of a petition, but information to a voter as to the content of a law actually referred.[2] The statutory provisions are mandatory. The referendum petition here failed to properly advise the voters. Hence, the petitions are invalid.

---

2. For purposes of our decision here we have no need to consider whether in a post-election challenge to the validity of a petition publicity could supply any shortage of required information.