[File No. 5926.]

THE TENNEY COMPANY, a Corporation, Appellant, v. JOHN W. THOMAS, a Sole Trader Doing Business under the Firm Name and Style of Farmers Grain & Fuel Company. HARRY L. THOMAS, Respondent.

(237 N. W. 710.)

Opinion filed July 14, 1931.

*W. H. Stutsman* and *Stinchfield, Mackall, Crounse, McNally & Moore,* for appellant.

*Ritchie & Ployher, Miller, Gorham & Wales, John J. McMahon* and *Martin O. Weisbrod,* for respondent.

NUESSLE, J.  This action was brought to foreclose a chattel mort-

gage executed to the plaintiff by the defendant John W. Thomas, and to set aside a mortgage given by John to his brother Harry Thomas covering the same property. Harry Thomas answered and interposed a cross-complaint wherein he set out his mortgage as a prior lien and asked for a foreclosure of the same as such.

It appears that John Thomas was desirous of engaging in the grain business. In May, 1929, he procured $24,000 from his brother Harry. With this money he purchased two grain elevators and appurtenances at Valley City. The Tenney Company, hereinafter referred to as the Company, is engaged in the grain commission business. In the course of its business it makes advances to buyers who consign to and sell grain through it. Thomas needed money to carry on his grain business so he arranged in the customary manner with the Company to make advances as he might require them. He represented that he owned the elevator properties and that the same were free from encumbrances. During the summer of 1929 the Company made advances to the extent of $10,000 or $11,000, but in fact Thomas bought no grain with this money. He used it for the final payments on his elevators and to make improvements on his plants. Later on in the season, however, he began to buy grain and further advances were made so that on October 8 he was indebted to the Company to the extent of more than $32,000. The Company was concerned about this indebtedness so one of its travelers called on Thomas. He found that a part of the money advanced had been used in paying for the plants and making improvements thereon and tried to get a reduction of the indebtedness. Some arrangements were made in this behalf and thereafter the indebtedness was reduced to about $21,000. On December 14 the Company's representative again called on Thomas and took from him a contract which included a chattel mortgage on the elevator properties. When this was presented for filing at the office of the register of deeds, it was discovered that contrary to his representations Thomas had executed a mortgage to his brother Harry in the amount of $24,000 covering the elevator properties and appurtenances. This mortgage was dated June 24, the date when the properties were acquired by John, and acknowledged before one Sad as of that date. It was filed for record on October 9. The contract agreement between the Company and Thomas contained the provisions that if at any time the former became dissatisfied

it might refuse to make further advances and realize upon any security that it had. When it was discovered that John had mortgaged the properties to Harry the Company tried to get him to turn them over to it subject to Harry's mortgage. John, however, refused to do this and this action was begun. On December 17, when it was discovered that the mortgage had been given to Harry, the Company interviewed John with respect to the matter and from what was said and done at this interview and later the Company was justified in believing that the mortgage was executed on June 24 but was purposely not filed for record in order that John's credit might not be impaired. The Company's course of action thereafter was predicated on this belief. However, on the trial of the case, it appeared that the mortgage was in fact executed on October 8 and dated back to June 24, and that the acknowledgment was dated as of the latter date purposely and to create a false impression as to the date of the execution thereof.

On this state of facts the Company contended that the mortgage executed to Harry Thomas was fraudulent and therefore void as against it and other creditors of John. It further contended that if the mortgage was in fact executed on October 8, the acknowledgment was designedly false and therefore amounted to no proper and legal acknowledgment, accordingly the mortgage was not entitled to be filed, and so the filing thereof afforded no constructive notice; that the mortgage must be considered as having been executed on June 24, and under the provisions of § 6758, Comp. Laws 1913, it was void as against the Company which had given credit and made advances to John Thomas on his representations that the properties were clear; that, in any event, Harry Thomas was estopped to establish that the mortgage was delivered on October 8 or thereafter, or was executed on that date, for the reason that the Company had been misled by the false date and acknowledgment of the mortgage into believing that it was in fact executed and delivered on June 24, and so believing it acted to its prejudice in not forcing John into bankruptcy and having the instrument declared void as constituting a preference.

The trial court held contrary to the Company's contentions. It found that the Harry Thomas mortgage was in fact executed on October 8 and refused to set it aside, held it prior to the mortgage of the

plaintiff and ordered a foreclosure thereof. Thereupon the Company perfected this appeal.

It is undisputed that John Thomas procured $24,000 from his brother Harry in May. This money constituted the greater part of the consideration paid for the elevator properties. Both John and Harry insisted that the arrangement between them whereby the money was provided was one of loan. The company insists that the transaction was one of gift. We think the record justifies the conclusion that, though the arrangement was one between brothers and at the time it was made and the money was provided nothing was said as to whether it was a loan or a gift or as to whether and when it should be paid, nevertheless it amounted to a loan. The company knew whence the money came but made no inquiry as to the nature of the transaction. The arrangement between John and the company was that the latter should make advances wherewith he might buy grain, and coal which he sold incidentally to the grain business. John broke faith and used large sums for the final payments on the properties and in making improvements thereon. He was required by the company to make statements showing his financial condition. He intentionally falsified these with respect to his financial worth and thereby deceived the company which relied upon them. When pressed for payment he sought to prefer his brother Harry and so on October 8 he executed the mortgage to Harry over which this controversy arose. He consulted his attorney, Sad, who drew this mortgage for him and acknowledged John's execution thereof. The mortgage was intentionally antedated and the acknowledgment was intentionally certified as of the false date of the mortgage. This was done for the advantage of Harry. Harry, however, was not a party to the arrangement. The testimony of both John and Harry is that Harry, who lived in Chicago, called up John the latter part of September, 1929, said that he needed money and when John told him he could not give him any asked John to send him a note and mortgage for the amount of the advance he had made so he might use it in procuring money. Harry had no knowledge of the arrangements that John had made with the company or that John was indebted to the company. After the mortgage was executed Sad filed the original in the office of the register of deeds on October 9, gave a copy to John and John then sent it, together with the note which it secured, to Harry

at Chicago. Harry was in Europe when the note and mortgage were finally sent forward to him. When he returned some time later he noted that the mortgage was dated June 24 and knew it was antedated, but he accepted it and did nothing further with respect to the matter. It also appears that John had no assets other than the elevator properties, the grain and coal he had on hand, and such bills receivable as he had acquired for coal sold. The aggregate value of these assets was, at the time both mortgages were given, much less than the total of his indebtedness to the company and to Harry. There were no other creditors. Of course John might lawfully prefer either of these creditors. See § 7218, Comp. Laws 1913. If he wanted to prefer either, perhaps the natural thing for him was to prefer Harry. Anyway he attempted to do so. Harry took the mortgage in good faith. Since it amounted to a mere preference it was not by virtue of that fact fraudulent and void. See Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; Cutter v. Pollock, 4 N. D. 205, 25 L.R.A. 377, 50 Am. St. Rep. 644, 59 N. W. 1062; Phillips v. Phillips, 53 N. D. 66, 204 N. W. 985; Merchants Nat. Bank v. Armstrong, 54 N. D. 35, 208 N. W. 847; Baird v. First Nat. Bank, 55 N. D. 856, 56 A.L.R. 200, 215 N. W. 810.

The company contends that it had no actual notice of the mortgage until December 17, three days after it had procured its mortgage covering the same properties and which it is seeking to foreclose in this action; that it had no constructive notice because of the filing of Harry's mortgage for the reason this mortgage was not eligible to be filed in the office of the register of deeds since it was not witnessed or acknowledged as required by the statute, § 6763, Comp. Laws 1913. Concededly, the mortgage was witnessed by one witness only, Sad. The company's position is that since the acknowledgment was intentionally false, and false in order to be of advantage to Harry, that it amounted to no acknowledgment at all; that therefore it was not entitled to be filed and so afforded no constructive notice. The statute, § 6763, Comp. Laws 1913, provides that a mortgage of personal property must be signed by the mortgagor in the presence of two witnesses, or its execution must be acknowledged before some official qualified to take acknowledgments, otherwise it shall not be filed as a chattel mortgage by the register of deeds. If these requirements are not met the

mortgage cannot properly be filed and so affords no constructive notice. Donovan v. St. Anthony & D. Elevator Co. 8 N. D. 585, 46 L.R.A. 721, 73 Am. St. Rep. 779, 80 N. W. 772; Pease v. Magill, 17 N. D. 166, 115 N. W. 260; Stoffel v. Sullivan, 49 N. D. 695, 193 N. W. 45; Security State Bank v. Burnstad Farmers' Elevator Co. 60 N. D. 43, 232 N. W. 295. Its contention in this respect is predicated on the proposition that the date of the certificate is a matter of substance and that therefore an intentionally false date vitiates the acknowledgment. We think, however, that the date is not an essential matter. The identity of the mortgagor and the fact of his acknowledgment are the material facts. These the certificate must show, otherwise it is bad. If it shows these facts it is good. Larson v. Elsner, 93 Minn. 303, 101 N. W. 307, 2 Ann. Cas. 989; Deseret Nat. Bank v. Kidman, 25 Utah, 379, 95 Am. St. Rep. 856, 71 Pac. 873; 1 R. C. L. 285. Before a certificate of acknowledgment will be held fatally deficient there must be an absence of some essential fact of a substantial character. McCardia v. Billings, 10 N. D. 373, 88 Am. St. Rep. 729, 87 N. W. 1008. We therefore hold that though the date of the certificate of acknowledgment was intentionally false, the mortgage was, nevertheless, properly filed.

Section 6758, Comp. Laws 1913, provides "A mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and incumbrancers of the property in good faith for value unless the original or an authenticated copy thereof is filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is at such time situated." The Company contends that the mortgage here in question must be considered as having been executed on June 24 and withheld from record until October 9; that it made the advances for which John is now indebted to it subsequent to June 24 and prior to October 9; that therefore, under the provisions of the statute last above quoted, the mortgage to Harry having been withheld from filing is void as to it. If it be conceded that the mortgage was in fact executed and delivered on June 24, there is no question but that the Company's contention in this respect is correct. Union Nat. Bank v. Oium, 3 N. D. 193, 44 Am. St. Rep. 533, 54 N. W. 1034; Hanson v. Blum, 53 N. D. 526, 207

N. W. 144. In this behalf the company insists that the certificate of acknowledgment is conclusive as to the date of the execution of the instrument, and that, in any event, Harry Thomas by his conduct with respect to the matter, is estopped from showing the fact, if it be a fact, that the mortgage was executed at a later date than the date thereof. However, we think that under the facts as shown in this case it is immaterial whether the mortgage was executed on the date it bears, June 24, or on October 8. For though it be conceded that it was executed on the former date, nevertheless it is clear that there never was any delivery of it or of the note evidencing the indebtedness which it secured until after it was filed in the office of the register of deeds on October 9. Certainly it was never turned over to Harry prior to that time. Neither can it be said that either John or Sad were Harry's agents to accept a delivery of the mortgage. John was the mortgagor. Sad was his attorney, not Harry's. In this connection see Keith v. Haggart, 2 N. D. 18, 48 N. W. 432, and cases cited therein. A mortgage is not effective as such until it is delivered with intent that it become effective. See § 5891, Comp. Laws 1913; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576; Grove v. Great Northern Loan Co. 17 N. D. 352, 138 Am. St. Rep. 707, 116 N. W. 345; First State Bank v. Kelly, 30 N. D. 84, 152 N. W. 125, Ann. Cas. 1917D, 1044; Stockton v. Turner, 30 N. D. 641, 153 N. W. 275; Foote, S. & Co. v. Skeffington, 52 N. D. 307, 202 N. W. 642. This being so, the date of execution becomes immaterial. The date of delivery controls. It follows that the statute, § 6758, has no application in the instant case. The indebtedness of John to the company was incurred prior to the delivery. Whatever John's intention may have been in the matter, Harry was not cognizant of it or party to it. So far as Harry is concerned the mortgage has effect as though it were dated as of the date of its delivery to him, unless an estoppel was raised against him. Merrill v. Denton, 73 Mich. 628, 41 N. W. 823.

Finally the company insists that Harry Thomas is estopped by reason of his conduct from asserting the priority of his mortgage as against it. In this behalf the Company contends that when Harry received the copy of the mortgage and the note he saw and knew that both were antedated; that it then became his duty to have the date of the certificate of acknowledgment on the mortgage corrected and the mortgage

refiled; that he failed to do this at his peril; that by reason of his accepting the mortgage as it was originally filed, he approved and adopted that which was done with respect to the taking of the same; that by reason of the false date of the mortgage and the acknowledgment the Company was misled when it discovered the fact of filing and so the instrument operated to its prejudice; that John Thomas was in fact insolvent and that had it known the true facts with respect to the execution of the mortgage it would have taken steps to have thrown John into bankruptcy and to have had the mortgage declared void as a preference; that it did not learn the true facts until Harry Thomas' answer in this action was filed when it was too late to have the mortgage avoided as a preference. We cannot agree. We can see nothing on which an estoppel can be predicated. It is true that Harry Thomas noted when he received the mortgage that it was antedated, but he knew nothing as to John's indebtedness to the Company. He had no knowledge that John was endeavoring to prefer him. He was interested only in getting security for that which was owing to him. He had advanced the money in May. He was justified in feeling that he was entitled to interest from June, the date of the note and mortgage. Certainly there was nothing in the fact that the note was dated as of June 24 to put him on notice of any irregularity in what was done. An antecedent debt is a good consideration for a mortgage, and nothing is more common than for mortgages to be executed and delivered securing notes dated long prior to the time of their execution. Harry Thomas was not a party to any fraudulent design. The note and mortgage were good. The date of the certificate of acknowledgment was immaterial. The results, both legal and practical, would have been the same had the instrument in fact been executed and acknowledged on June 24 and not delivered until October 9. Mortgagees cannot always be present when their mortgages are witnessed or acknowledged. They are not required at their peril to insure that the dates of the instruments or of the acknowledgments are correct. There is no requirement that a mortgage be acknowledged on the date of its delivery. Those who see an instrument in the office where it is required to be filed know that the date of the witnessing or the date of the certificate of acknowledgment may not be the date of delivery when the instrument became effective. They are under as much of a duty to inquire as the mortgagee

is to inform. The mortgage is filed to give notice. They see it and have notice. The notice is from the date of filing and not from the date of the execution, acknowledgment, or delivery. Comp. Laws 1913, § 6759; Hanson v. Blum, 53 N. D. 526, 207 N. W. 144, supra; Johnson v. Stellwagen, 67 Mich. 10, 34 N. W. 252.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL, and BURKE, JJ., concur.