John DAWSON, as a duly qualified elector, resident, taxpayer and citizen of the State of North Dakota, for himself and all others similarly situated, Plaintiff and Petitioner,

v.

Ben MEIER, as Secretary of State of the State of North Dakota, Defendant and Respondent.

No. 7627.

Supreme Court of North Dakota.

Sept. 18, 1956.

Francis Murphy and Donald H. Crothers, Fargo, for plaintiff and petitioner.

Leslie R. Burgum, Atty. Gen., and Kenneth Moran, Asst. Atty. Gen., for respondent Secretary of State.

Quentin N. Burdick, Fargo, on oral argument amicus curiae.

MORRIS, Justice.

On July 9, 1956, there was filed in the office of the Secretary of State of the State of North Dakota a petition consisting of 727 copies bearing 20,752 purported signatures of qualified electors of the state of

North Dakota. This petition requested that there be placed upon the ballot at the next statewide election for approval or rejection an amendment and reenactment of Section 176 of the state constitution.

Section 202 of the North Dakota Constitution provides methods by which it may be amended, one of which is by a vote of the people upon an amendment proposed by an initiative petition of 20,000 electors at large filed with the secretary of state at least 120 days prior to the election at which the proposed amendment is voted upon. All provisions of the constitution relating to the submission and adoption of measures by initiative petition and on referendum petition apply to the submission and adoption of amendments to the constitution.

Section 25 of the constitution reserves to the people the power to propose and reject measures by initiative and referendum and contains certain provisions for the exercise of that power. It provides among other things that

"The Secretary of State shall pass upon each petition, and if he finds it insufficient, he shall notify the 'Committee for the Petitioners' and allow twenty days for correction or amendment. All decisions of the Secretary of State in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the Secretary of State shall place the measure on the ballot and no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon. If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it."

On July 14, 1956, the secretary of state, by letter, advised the person who filed the petition that it contained 20,347 acceptable signatures.

On August 24, 1956, the plaintiff and petitioner in this proceeding filed in this court a petition for review of the sufficiency of the initiative petition and the action of the secretary of state thereon. We issued an order to show cause to the secretary of state returnable August 31, 1956. On that date the secretary of state appeared in person and by counsel, the attorney general of the state, and presented to this court all of the copies of the petition for our review.

The case was argued by counsel for the contending parties and amicus curiae and the matter submitted on the pleadings and the copies of the petition that had been filed with the secretary of state. No additional evidence was produced. We have examined the petition in detail in order to determine its sufficiency and the sufficiency and legality of the signatures on the various copies under statutory requirements provided by the legislature.

Section 25 of the constitution says:

"This section shall be self executing and all of its provisions treated as mandatory. Laws may be enacted to facilitate its operation, but no laws shall be enacted to hamper, restrict or impair the exercise of the rights herein reserved to the people."

In 1925 the legislature adopted the following statute which is now Section 16–0111 NDRC 1943:

"No person shall sign any initiative, referendum, or recall petition circulated pursuant to the provisions of sections 25 and 202 of the constitution of this state, and of article 33 of the amendments of such constitution, unless he is a qualified elector. No person shall sign any such petition more than once and each signer shall add his residence, post office address, and the date of signing. Each copy of any petition provided for in this section, before being filed, shall have attached

thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector. Any person violating any provision of this section is guilty of a misdemeanor."

In Wood v. Byrne, 60 N.D. 1, 232 N.W. 303, this court held that the affidavit provided for in the foregoing statute could be made on information and belief and that the provision requiring it does not hamper, restrict or impair the exercise of the rights reserved to the people by Section 25 of the constitution. This statute was again considered in Schumacher v. Byrne, 61 N.D. 220, 237 N.W. 741, wherein this court said:

"Following Wood v. Byrne [60 N.D. 1] 232 N.W. 303, it is held that the legislative intent in adopting chapter 135, Session Laws of 1925, being sections 1104a1 and 1104a2 of the Supp., was to regulate and facilitate the circulation of such petition so as to aid the secretary of state to 'pass upon each petition' as required by the provisions of the Constitution, and such legislation 'must be liberally construed so as to effect this purpose.' This provision of the statute, 'Each signer shall add his residence, post office address, and date of signing,' is intended by the Legislature to aid the secretary of state in determining whether the signer possessed the necessary qualifications for petition, and where such residence, post office address, and date of signing are given correctly, it is a sufficient compliance with the statute if the same are written by the petitioner himself, or by some other person at his direction and at the time of signing so that the whole proceedings constitute but one act."

The statute was intended by the legislature to safeguard and facilitate the use of the initiative and referendum for the benefit of the people of the state by discouraging fraud and abuse and minimizing mistakes that might occur in the use of the right. We have therefore approached the scrutiny of the petition and the individual signatures thereon from a liberal viewpoint avoiding disqualification in many instances where compliance with the statute was questionable but striking from the list of signers those signatures that clearly violated the constitution or the statute. Some signatures are subject to disqualification on several grounds but where such a signature has been once disqualified and stricken it has not been considered further with respect to other disqualifying defects.

The first group of signatures to be considered are those where no date of signing appears. The statute requires such a date and the reason for it is obvious. Each person signing a copy of the petition must be an elector at the time he signs. Time is an important element in determining the qualifications of an elector. He or she must be twenty-one years of age and have resided in the state a year. The date is an important and common requirement with respect to the determination of the validity of signatures to initiative and referendum petitions. Shields v. Wells, 65 S.D. 552, 276 N.W. 246; Uhl v. Collins, 217 Cal. 1, 17 P.2d 99, 85 A.L.R. 1370; Whitman v. Moore, 59 Ariz. 211, 125 P.2d 445; Ahrens v. Kerby, 44 Ariz. 269, 37 P.2d 375. The petition under our scrutiny bears 349 undated signatures. These cannot be counted.

The plaintiff has challenged groups of signatures where the city or town of the residence or post office address of the signer appears by abbreviation. He also challenges others where the date or residence or post office address is indicated by ditto marks. Ditto marks constitute a common form of written expression and where properly used their meaning is clear. The abbreviations used are those whose meaning is generally understood and in such cases their use also is permissible. The

abbreviations and ditto marks must be inserted by the petitioner himself or by someone else at his direction at the time of signing so that the whole proceeding constitutes one act. Schumacher v. Byrne, 61 N.D. 220, 237 N.W. 741. We have rejected no signatures because of the use of abbreviations or ditto marks. People ex rel. Wright v. Kelly, 294 Mich. 503, 293 N.W. 865; In re Initiative Petition No. 176, State Question No. 253, 187 Okl. 331, 102 P.2d 609; State ex rel. Jensen v. Wells, 66 S.D. 269, 281 N.W. 357; Halgren v. Welling, 91 Utah 16, 63 P.2d 550; Whitman v. Moore, 59 Ariz. 211, 125 P.2d 445.

■ The plaintiff challenges 143 signatures as being duplications. A careful examination of these signatures discloses that the plaintiff is correct in most instances. Counsel for the parties agreed in open court that where duplications appeared upon the face of the petition one of the signatures should not be counted. We find 123 such instances.

■ Four copies of the petition have attached to them by staples sheets of paper on which have been written dates, names of persons, and names of towns or cities in North Dakota. Two of such sheets bear no heading. One has the word "continued" and two sheets attached to one petition are ruled into two columns with "name" at the top of one column and the word "town" at the top of the other. There is nothing on the sheets to indicate by whom they were circulated or by whom or when they were stapled to copies of the petition bearing the affidavit of the circulator provided by statute. The sheets being wholly without identification other than being stapled to copies of the petition cannot be considered parts of the petition. The 84 signatures that they bear cannot be counted.

■■ A number of questions have been raised with respect to affidavits of genuineness of signatures. It is pointed out that a number of copies of the petition purport to have been verified before a notary public but no notary seal is attached. In these instances the affidavit appears to have been signed by both the affiant and a notary who has signed as such and has inserted the date of the expiration of his commission. Affidavits may be made before any person authorized to administer an oath. Section 31-0407 NDRC 1943. Some of such persons have seals and some do not. A notary public has a seal. Its purpose is evidentiary. Its presence on the jurat indicates a strong presumption that the person before whom the document was executed is in fact a notary. But if a notary actually administers an oath to an affiant and otherwise properly certifies that the oath was taken before him, the failure of the notary to attach his seal which is presumably the last act of the transaction does not destroy the legality of the oath or render the jurat invalid. The failure of the notary to attach his seal does not destroy the validity of the copy of the petition from which it was omitted.

In Wiley v. Carson, 15 S.D. 298, 89 N.W. 475, it was held under statutes similar to ours which do not expressly require the affixing of a notary seal to the jurat of an affidavit that the failure of a notary to affix his seal to the verification of a complaint did not render the verification invalid.

421 copies of the petition containing some 11,906 signatures are challenged because the notary public whose jurat is attached to the affidavit on those copies failed to print, stamp, or type his name thereon in accordance with the provisions of Chapter 287 SLND 1955. The law referred to amended Section 44-0612 NDRC 1943 so as to provide that every notary public following his signature to the jurat or certificate of acknowledgment "shall legibly print, stamp, or type his name" and further provided that such endorsement must be disconnected from the seal. The only conceivable purpose for such a requirement is to provide in legible form the name of the notary public where his name is not other-

wise legible from the imprint of his seal or from his signature. Section 44–0604 ND RC 1943 requires that each notary public provide himself with an official seal bearing his name. Where the name of the notary public can be ascertained from the imprint of the seal or from his legible signature the statute is purely directory and failure to comply will not result in an invalid jurat. The names of all notaries appearing on jurats attached to otherwise valid petitions are legible and the jurats are valid.

■ The affidavit on one copy of the petition purports to have been sworn to before a postmaster. A postmaster is not by virtue of his office authorized to administer oaths under the laws of North Dakota. The jurat is void and the 24 signatures on that copy of the petition may not be counted. The jurat on one copy of the petition containing 6 signatures bears no signature of the affiant and four other copies containing 96 signatures do not purport to have been sworn to. These signatures may not be counted.

■ One copy of the petition containing 21 signatures and having but one column for "Residence and Post Office Address" has written in that column after each signature the name of a town in and the abbreviation for South Dakota. An elector of the state of North Dakota may have a post office address outside of the state but his legal residence must be within the state and have existed there for a year prior to signing the petition.

"Every person has in law a residence where such person remains when not called elsewhere for labor or special or temporary purpose, and to which he returns in seasons of repose. Such person can have but one residence which he cannot lose until another is gained. Leaving his place of residence is not an abandonment unless he establishes another, and a new residence can be established only by the union of act and intent." State ex rel. Sathre v. Moodie, 65 N.D. 340, 258 N.W. 558, 559.

This copy clearly indicates on its face that the signers are not residents of North Dakota. An identical situation exists with respect to another signer who shows his residence and post office address to be in Minnesota. Because a residence outside the state is indicated 22 signatures cannot be counted.

■ While the ballot title and the text of the proposed amendment are identical in all copies of the petition the forms vary in several respects. For instance, one form states in the heading at the top of the petition:

"We, the undersigned, electors of the State of North Dakota, *residing in the voting precinct and at the post office address* set opposite the name of each of us, do hereby declare that we are bona fide electors of the State of North Dakota, and we do hereby propose, submit, and initiate the following Constitutional Amendment, * * *." (Italics supplied.)

On the lower one-third of the face of this form space is provided for 15 signatures upon ruled lines divided into columns headed as follows:

| 1956 Month Day | Name | North Dakota Address | Precinct |
|---|---|---|---|

Having in mind a liberal application of the statute requiring that each signer shall add his residence, post office address, and date of signing, we have construed the precinct to be sufficient as a statement of residence referred to in the heading at the top of the form. Where the signer has indicated the date and the name of the town or city of his post office address and has added the precinct either by name or

number the signature has been accepted. Where, however, the signer on this form has failed to indicate his precinct that signature has been rejected for he has stated only his post office address and has not stated his residence. For this reason 393 signatures on the face of this form have not been counted. On the back of this same form there is space for 35 signatures under a different heading which is as follows:

| 1956 Month Day | Name | North Dakota Residence and Post Office Address |
| --- | --- | --- |

While we do not approve of a form which does not provide for the statement of the residence and post office address separately, for reasons which we shall later explain, we have not rejected the signatures appearing on the back of this form under the heading above set forth when they are otherwise sufficient.

We now turn to another form upon which a number of signatures have been presented. The heading on this petition states:

"We, the undersigned, qualified electors of the State of North Dakota, with *residence and post office address set opposite the name of each of us,* do hereby declare that we are qualified electors of the State of North Dakota, and we do hereby propose, submit, and initiate the following Constitutional Amendment, * * *." (Italics supplied.)

On the lower one-third of this form appear lines for 15 signatures under columns bearing the following heading:

| 1956 Month Day | Name | North Dakota Residence and Post Office Address |
| --- | --- | --- |

It will be noted that this heading is the same as that which appeared on the back of the form previously considered. We did not reject the signatures under this heading appearing on the other form and we do not reject those on this one. On the back of this form appear lines for 35 signatures under the following column heading:

| 1956 Month Day | Name | North Dakota Address | Precinct |
| --- | --- | --- | --- |

This column heading on the back of the form appears to be the same as that on the face of the form previously considered. It provides a space for both post office address and precinct which we have determined to accept as the equivalent of residence. Where the precinct is stated, we find the signatures under this column heading acceptable if they are not otherwise invalid. Where no precinct is stated and the residence is not otherwise designated we must reject the signatures. There are 95 of these. They cannot be counted.

The total number of signatures on the petition was stipulated to be 20,752. For reasons which we have heretofore set out we find that of these 1,192 are clearly illegal and cannot be counted. This reduces the number of signatures to 19,560 which is insufficient to entitle the proposed constitutional amendment to be placed on the ballot.

Having determined that the petition does no have sufficient valid signatures to entitle the proposed measure to be placed on the ballot we need not determine other questions of invalidity. But in view of the fact that the constitution vests original jurisdiction in this court to review the action of the secretary of state and determine

the validity of initiative or referendum petitions, we deem it advisable to comment on a defect appearing on the great majority of the copies of the petititon without determining whether that defect invalidates the petition.

Section 16–0111 NDRC 1943 requires the signer to "add his residence, post office address, and the date of signing."

■ The terms "residence" and "post office address" are not synonymous. Atwood v. Tucker, 26 N.D. 622, 145 N.W. 587, 51 L.R.A.,N.S., 597. The post office address of a person is the place to which his mail is directed in order that it may be delivered to him by the post office. Or, in other words, it is the place where he gets his mail. His residence is the place where he remains when not called elsewhere for labor or a special or temporary purpose and to which he returns in seasons of repose. Wehrung v. Ideal School District No. 10, N.D., 78 N.W.2d 68. See definition quoted above from State ex rel. Sathre v. Moodie, supra. The residence and the post office address of an elector may or may not be the same place depending upon the circumstances and activities of the individual. The legislature has plainly said that each signer shall add both.

South Dakota statutes require that each signer of an initiative or referendum petition "shall add to his signature his place of residence, business, post office address, and date of signing, * * *." SDC 55.-0402. This requirement is the same as that contained in our statute except it requires the signer to add his business which ours does not. The initiative and referendum provisions of our constitution are self-executing while those of South Dakota are not. This difference, however, does not affect the construction of a statute designed to facilitate the operation of the constitutional provisions which does not restrict or impair the constitutional rights. See Section 25, North Dakota Constitution. Schumacher v. Byrne, 61 N.D. 220, 237 N.W. 741.

Headley v. Ostroot, S.D., 76 N.W.2d 474, 476, is the latest of a number of cases dealing with the construction and application of the South Dakota statute. A large number of signers had added to their signatures the post office address, business, and date of signing but omitted their place of residence. After pointing out that the statutory requirements are to prevent fraud or corruption in securing petitions the court said:

"We have also held that these statutory requirements are not difficult of understanding nor arduous to perform. Morford v. Pyle, supra [53 S.D. 356, 220 N.W. 907]; Shields v. Wells, supra [65 S.D. 552, 276 N.W. 246]. This holding is confirmed by the number of instances where proper petitions have been filed with the Secretary of State to invoke either the initiative or a referendum. See Annotations to Art. III, § 1, Constitution, appearing in Session Laws, 1955.

"Whether the requirement that a signer of a referendum petition must add his residence in addition to his post office address is a reasonable requirement is to be determined by the legislature in the first instance."

The court further states:

"If effect is to be given to the constitutional provision it is clear that safeguards must be established to prevent fraud and corruption in securing the petitions. In this connection it is essential, we believe, that the petitions disclose information which will readily permit anyone to check the petitions and determine if the signers are qualified. The legislature has declared that a statement of both residence and post office address tends to accomplish this purpose, and in a manner better suited to the purpose than simply the statement of the post office address and not the residence. This court has pointed out that residence and post

office address are not always the same, and has refused to assume or infer that they are."

A reading of the South Dakota cases discloses that the form of petition in use in that state provides separate columns or spaces in which the signer may write his place of residence and his post office address.

In some states by either constitutional or statutory provisions the signer is required to add to his residence the street and number if such exists. See Mayock v. Kerr, 216 Cal. 171, 13 P.2d 717; People ex rel. Wright v. Kelly, 294 Mich. 503, 293 N.W. 865; Halgren v. Welling, 91 Utah 16, 63 P.2d 550; Sayman v. Becker, Mo., 269 S.W. 973; Elkins v. Milliken, 80 Colo. 135, 249 P. 655. Our statute does not so require.

It is clear that our legislature intended that the signer should add both his residence and his post office address. All copies of the petition, except those that provide one column for address and another for precinct, which we presume is the residence of the signer, have only one column following the signatures at the top of which is printed "North Dakota Residence and Post Office Address." With but

few exceptions the signers have added in the space so provided but one address without indicating whether or not their residence and their post office address are the same. Due to the fact that the petition is clearly insufficient on other grounds we have not found it necessary to determine whether or not adding to the signature one address on the form we have described is sufficient to comply with the statutory requirement that the signer add his residence and post office address. We point out, however, that the question of the sufficiency of the statement of residence and post office address could more easily be answered in most cases if the form were so designed that the signer would be encouraged to state his residence and post office address separately or if they were the same to so indicate.

 The decision of the secretary of state finding the petition sufficient is set aside. He is directed to reject the petition and deny the petitioners' request that the proposed constitutional amendment be placed upon the ballot to be voted upon at the next state-wide election.

BURKE, C. J., and SATHRE, JOHNSON and GRIMSON, JJ., concur.