Gail HERNETT, John Rouzie, and George Sinner, as Duly Qualified Electors of the State of North Dakota, for Themselves and All Others Similarly Situated, Petitioners,

v.

Ben MEIER, as Secretary of State of the State of North Dakota, Respondent.

Civ. No. 8584.

Supreme Court of North Dakota.

Jan. 16, 1970.

William C. Kelsch, Mandan, and Gerald G. Glaser, Bismarck, for petitioners.

Helgi Johanneson, Atty. Gen., and Paul M. Sand, First Asst. Atty. Gen., Bismarck, for Secretary of State.

Patrick A. Conmy, Bismarck, for Referral Committee.

STRUTZ, Justice.

On June 16, 1969, petitions were filed in the office of the Secretary of State, bearing 7,496 purported signatures of qualified electors of this State, seeking to refer to a vote of the people Senate Bill 410, now Chapter 413 of the 1969 Session Laws. The bill, as passed by the Legislative Assembly, authorized the construction of a multipurpose building on the State Capitol grounds, which proposed building was to be constructed for the use and occupancy of the Bank of North Dakota and such other legislative and executive uses as were provided by the Act. The Act further provided for an appropriation for the cost of construction of such building.

On June 23, the Secretary of State found the signatures on such petitions to be insuf-

ficient, and he thereupon returned 118 of the petitions to the committee sponsoring the referral, allowing twenty days for correction or amendment. These petitions subsequently were returned to the Secretary of State within the constitutional time limit, after having been corrected or amended. After the return of such petitions, they again were examined and were found by the Secretary of State to contain 7,414 valid signatures. He thereupon announced that the petitions were sufficient to refer Senate Bill 410.

On September 12, 1969, the petitioners in this proceeding (as distinguished from the electors who signed referral petitions) presented to this court a petition for review of the sufficiency of the referral petitions and for a review of the decision of the Secretary of State as to their sufficiency. We issued an order to show cause, returnable at 10 a. m. on October 7, 1969. On that date, the Secretary of State appeared in person and by his counsel, the Attorney General of the State of North Dakota, and presented all of the referral petitions which had been filed with him, which he had found, after correction or amendment of some, to be sufficient to refer Senate Bill 410 to the people. Arguments were presented by both parties, and the matter was submitted on the pleadings, on certain affidavits submitted, and on the petitions filed. No other evidence was presented by either party.

The petitioners assert that the referendum petitions which were finally filed with and approved by the Secretary of State do not have a sufficient number of valid signatures to comply with the constitutional requirements for the referral of an Act of the Legislature to a vote of the people. It is undisputed that more than the required 7,000 names appear on these petitions, but the petitioners contend that a number of the signatures are invalid and do not qualify as referral signatures, either under the provisions of the Constitution or under Section 16–01–11, North Dakota Century Code,

which establishes certain regulations governing initiative and referendum petitions. They further assert that if the invalid signatures are not considered, the petitions will have less than the required 7,000 names. They urge numerous objections to various signatures appearing on the petitions, some of the names being subject to several of the objections raised. We shall consider and discuss the objections raised in the order in which they are made by the petitioners.

 In paragraph VIII–A of their petition, the petitioners first assert that 1,601 of the signatures are invalid and may not legally be counted for the reason that the signers have failed to state their places of residence sufficiently and have set out only the name of the county in which they live as their residence.

Section 25 of the North Dakota Constitution reserves to the people of the State the power to reject measures which the Legislative Assembly has passed, and it sets forth, among other things, how that power shall be exercised. In this regard, it provides:

"The Secretary of State shall pass upon each petition, and if he finds it insufficient, he shall notify the 'Committee for the Petitioners' and allow twenty days for correction or amendment. All decisions of the Secretary of State in regard to any such petition shall be subject to review by the supreme court. But if the sufficiency of such petition is being reviewed at the time the ballot is prepared, the Secretary of State shall place the measure on the ballot and no subsequent decision shall invalidate such measure if it is at such election approved by a majority of the votes cast thereon. If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it."

Section 25 of the Constitution further provides that it shall be self-executing and that its provisions are mandatory. It also

provides that laws may be enacted to facilitate its operation, but that no law shall be enacted to hamper, restrict, or impair the exercise of the rights reserved therein to the people.

Pursuant to this latter provision of the Constitution which authorizes the Legislature to enact laws to facilitate the operation of the initiative and referendum processes, the Legislative Assembly, in 1925, enacted Chapter 135, now found in the Century Code as Section 16–01–11. That section provides:

"No person shall sign any initiative, referendum, or recall petition circulated pursuant to the provisions of sections 25 and 202 of the constitution of this state, and of article 33 of the amendments of such constitution, unless he is a qualified elector. No person shall sign any such petition more than once and each signer shall add his residence, post-office address, and the date of signing. Each copy of any petition provided for in this section, before being filed, shall have attached thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector. Any person violating any provision of this section is guilty of a misdemeanor."

It will be observed that Section 25, by specific terms of the Constitution, is made self-executing. It reserves the initiative and referendum powers to the people, independent of the Legislature. Any legislation which the Legislative Assembly might enact which governs or affects the powers so reserved to the people must be for the sole purpose of facilitating the exercise of the powers of initiative and referendum, which are reserved to the people by the Constitution, and no law may be enacted which in any way will hamper or impair the powers so reserved.

Nowhere in these proceedings do the petitioners contend that the signatures which they claim are invalid are not the genuine signatures of the persons whose names they purport to be. Neither do they assert that there is not a sufficient number of names on the referral petitions. The Constitution specifically provides that when proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking the sufficiency of the petitions.

The petitioners rely upon the provisions of Section 16–01–11, North Dakota Century Code, purportedly enacted to facilitate the operation of the constitutional provisions relating to initiative and referendum. This statute prescribes that each elector who signs his name to such a petition shall add his residence, postoffice address, and the date of his signing of the petition. No such requirement is made by the Constitution, since the Constitution merely requires that each signer shall be an elector. The constitutional requirement is that—

"Seven thousand electors at large may, by referendum petition, suspend the operation of any measure enacted by the legislature, except an emergency measure."

Section 16–01–11, North Dakota Century Code, does not provide just how specific the signer must be in giving his residence. This court has held that giving the signer's precinct was an acceptable designation of his residence. Dawson v. Meier, 78 N.W.2d 420 (N.D.1956). All that the Constitution requires is that such signer be an elector of this State. That being true, we believe that the giving of the elector's county as his place of residence is a sufficient compliance with the statutory requirement that he state his residence. Such statute must be liberally construed by the courts to facilitate and not to hamper the exercise by the people of the rights reserved to the people by the Constitution. See Klosterman v. Marsh, 180 Neb. 506, 143 N.W.2d 744 (1966).

All doubt as to the construction of applicable provisions pertaining to the rights so reserved to the people must be resolved in favor of upholding those rights. McFadden

v. Jordan, 32 Cal.2d 330, 196 P.2d 787 (1948).

Had the Legislature intended that specific information be given on the matter of residence of an elector signing referendum petitions, it could easily have so provided, always being careful, however, that any requirement which it laid down would facilitate the exercise of the rights reserved to the people and that it would not hamper the exercise of those rights.

The petitioners, in urging that the giving of the county as the residence of the elector is an insufficient designation of such residence, cite the South Dakota case of Morford v. Pyle, 53 S.D. 356, 220 N.W. 907 (1928). We would point out that South Dakota decisions on issues of sufficiency of a petition for referendum are not in any way applicable to questions arising under the initiative and the referendum in North Dakota. In South Dakota, the constitutional provision for the initiative and the referendum is not self-executing, as it is in this State. The South Dakota Constitution specifically provides that the Legislature shall make suitable provisions for carrying into effect the rights of initiative and referendum. Therefore, without legislation on the subject, the rights did not exist. In North Dakota, however, the constitutional provision reserving to the people the rights of initiative and referendum is specifically made self-executing. That constitutional provision existed without any legislation, and legislation which was enacted could only facilitate the exercise of such rights and could not hamper, restrict, or impair the operation of this constitutional provision. Thus the legislation providing for the listing of the residence of the signer is a requirement to facilitate the exercise of the rights of initiative and referendum. If the county given by the elector as his residence is his county, that fact, together with the listing of his postoffice address, would give sufficient information to the Secretary of State to check each signer.

We therefore find that the giving of the county of the elector signing a referendum petition as his place of residence is an adequate designation of the residence of the elector signing such petition, under the provisions of Section 16–01–11 of the North Dakota Century Code.

■ The petitioners next contend, as set out in paragraph VIII–B of their petition, that referral petitions bearing 1,107 signatures were circulated by persons who were under the age of twenty-one years and that such persons, not being electors, could not sign the required affidavits to the effect that each signature on the petition is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector of the State of North Dakota.

There is no requirement, either in the Constitution or in Section 16–01–11 of the North Dakota Century Code, that persons who circulate initiative and referendum petitions be electors or that they shall be twenty-one years of age. Section 16–01–11, North Dakota Century Code, merely provides that no person shall *sign* such petitions unless he is an elector of the State. It then goes on to require that each copy of such petition, before being filed, shall:

"* * * have attached thereto an affidavit to the effect that each signature to the paper appended is the genuine signature of the person whose name it purports to be, and that each such person is a qualified elector."

Thus, to sign such a petition, a person must be an elector. But neither the law nor the Constitution requires that the circulator be an elector or that he be twenty-one years of age. Such petition could, we believe, be circulated by any person who is qualified to sign an affidavit in which he states that each signature on the petition is the genuine signature of the person whose name it purports to be and that each person who signed the petition is an elector.

Our statute defines an affidavit as—

" * * * a written declaration under oath made without notice to the adverse party." Sec. 31–04–02, N.D.C.C.

There is no requirement that a person signing an affidavit be twenty-one years of age, or any particular age. In the absence of a statute to the contrary, an infant old enough to understand the facts and the obligations of an oath may execute an affidavit. 2 C.J.S. Affidavits § 3–c, p. 926.

Thus the contention of the petitioners that the referral petitions are invalid which were circulated by individuals under the age of twenty-one years, who signed the necessary affidavits to the effect that each signature to the petitions is the genuine signature of the person whose name it purports to be and that each such person is a qualified elector, is without merit. The signatures on such petitions are found to be valid.

■ The petitioners next contend, in paragraph VIII–C of their petition, that 297 signatures on the referral petitions are invalid for the reason that these signers failed or neglected to state their place of residence sufficiently, in that they gave as their residence their rural route number or their box number, or both, without any further designation of residence. Petitioners state that it is obvious that the signers could not live in a postoffice box.

We believe that what we have said heretofore in regard to the 1,601 signers whose names appear on referral petitions, who gave as their residence the county in which they lived, would be equally applicable to signers who gave as their residence their rural route number or box number, or both. The Constitution merely requires that each signer be an elector of this State. Any more specific information as to residence must be found to be required under Section 16–01–11, North Dakota Century Code. The purpose of any more specific information required by this section must be found to be for the purpose of facilitating the

exercise of the rights reserved to the people, and such requirements may not hamper the rights so reserved. Such additional information required under the law therefore must have been for the sole purpose of enabling the Secretary of State to determine whther the signer was, in fact, an elector of the State of North Dakota. This information could have nothing to do with the eligibility of the elector to sign the petition. Giving the rural route number of such person would give the information required. No contention is made in this proceeding that each person in this group did not personally sign the petition himself, or that he was not an elector. And yet that is the only thing the Constitution requires. If the stated residence of a signer on a certain rural route in the State of North Dakota is correct, how can the giving of such information possibly contribute to fraud? It is sufficient to enable the Secretary of State to check such residence, and that is the only purpose of having an elector give his place of residence. No one has even suggested, so far as we have been able to determine from the record, that any of the information as to residence given by these signers is not correct. And if the information is correct, it gives to the Secretary of State all of the information he needs to prevent fraud.

We therefore find that the giving of a rural route number, together .with a postoffice address of each signer, is a sufficient compliance with the provisions of the Constitution and with the provisions of the statute which was enacted to facilitate the exercise of the power of referendum, which was reserved by the Constitution to the people of this State.

■ The next contention of the petitioners, set out in paragraph VIII–D, is that 200 of the signatures appearing on the petitions are invalid as referral signatures for the reason that the signers purported to have signed such petitions on a date subsequent to the date of the sworn affidavit of the circulator of the petitions on which

such names appear, and subsequent to the notary's acknowledgment; that such signatures therefore were not sworn to by affidavit as required by Section 16–01–11, North Dakota Century Code.

When the Secretary of State became aware of the fact that the date of signing given by electors on certain petitions was subsequent in time to the date of the affidavits appended thereto as required by statute, stating that each signature to the petition was the genuine signature of the person whose name it purported to be and that each such person was a qualified elector, it became his duty to refuse to count such signatures. If the matter had rested there, these signatures would of course be invalid and could not be counted. However, under the provisions of the Constitution, when it was discovered that these petitions were insufficient because of such discrepancy in the date of the affidavit and the date of signing, the Secretary of State was required to notify the "Committee for the Petitioners" circulating the referral petitions of that fact and he was required to give such committee twenty days for correction or amendment of such petitions. Subsequently, new affidavits were filed with the Secretary of State correcting the defects complained of. The affidavits of the circulator, as corrected, were dated subsequent to the dates on which it appears that these electors signed the petitions.

It has been held that where the purported date of an acknowledgment is prior to the date of the instrument on which the acknowledgment appears, such fact does not necessarily affect the validity of the instrument itself. The date of the certificate is not an essential part of the acknowledgment, and its omission, or a mistake therein, will not invalidate the certificate itself. 1 C.J.S. Acknowledgments § 85, p. 843; 1 Am.Jur.2d Acknowledgments, Sec. 47, p. 478.

In the case of Tenney Co. v. Thomas, 61 N.D. 202, 237 N.W. 710 (1931), this court held that the date in a certificate of acknowledgment is not regarded as a material fact. This reasoning has been followed in other States. For example, in Levitt v. 1317 Wilkins Corporation, Sup., 58 N.Y.S. 2d 507 (1945), it was held that an acknowledgment which was dated one year prior to the date of the instrument did not render the acknowledgment ineffective.

In the light of these decisions, it is apparent that the discrepancy in dates was not fatal. However, under our Constitution, the Secretary of State was required to notify the referral "Committee for the Petitioners" of the insufficiency of such petitions and allow twenty days for correction or amendment. These matters now have been corrected, and we believe that the signatures thereon, after correction of the petitions, were properly considered by the Secretary of State and counted as valid signatures.

■■■ Petitioners, in paragraph VIII–E of their petition, challenge 415 signatures on the petitions filed as invalid for the reason that such petitions were not signed by the purported electors in the presence of the person who circulated them. They point out that because of the number of signatures obtained on certain dates of electors residing in widely scattered areas of the State, it would have been absolutely impossible for the circulator to have obtained the signatures on such petitions on the dates listed. Therefore, they assert, the circulator could not and did not circulate such petitions legally, but that the petitions must have been circulated by unknown persons who, after they had secured the signers, had another person sign the required affidavit as circulator. They strenuously assert that the one who signed the required affidavit could not have supervised the signing of the petitions, as required by statute, and he therefore had no personal knowledge that each person who signed the petitions was the person whose name it purported to be.

Respondent, in his return to the order to show cause, submits an explanation given

by the committee sponsoring the referral as to how certain individual circulators were able to secure large numbers of signatures, on given days, of persons from wide areas in the State. It is asserted that the circulators took the petitions to livestock and other auction sales which were attended by large numbers of persons from widely separated areas of the State; that a number of these petitions then were placed on tables and the persons attending the sales who were electors of the State were invited to sign them; that such signatures were placed on the petitions by large numbers of persons in a short period of time and that the petitions were, in fact, signed in the presence of the circulator; that although all signers were not known to the circulator personally, persons who were asked to sign had been instructed that only electors could sign; and that such signers did sign in the presence of the circulator, who, on information and belief, stated that such signatures were those of the persons whose names they purported to be and that such persons were qualified electors of the State.

The petitions are regular on their face. We do not believe that the respondent, as Secretary of State, should be required to check each signer, where the signatures appear to be regular and valid, to determine whether or not the persons named did, in fact, sign the petition. The Constitution clearly provides:

"* * * If proceedings are brought against any petition upon any ground, the burden of proof shall be upon the party attacking it."

We find that the petitioners have not sustained this burden of proof and have not shown that any of the signatures are invalid merely because, they assert, it would have been practically impossible for one circulator, who obtained signatures from large numbers of persons from wide areas on certain dates, to have presented the petition to all of them personally.

Petitioners next assert, in paragraph VIII–F of their petition for review, that an unknown number of signatures on these petitions were legally invalid for the reason that it appears from the face of the petitions that one circulator personally obtained the signatures of 304 electors on one day, June 14, 1969, and that it would have been impossible for one person to present the petition personally to 304 persons for consideration and acceptance or refusal and finally to get 304 of such persons to sign their names and fill in their postoffice addresses and residences to the petitions within so short a period of time. We believe that what we have said in regard to the objections set out in petitioners' paragraph VIII–E, challenging signatures of certain persons from widely separated areas, also applies to the signatures objected to in this category. Not once do the petitioners allege or even imply that any of these signers are not electors of the State of North Dakota, which is the only qualification required of a signer on a referendum petition under the Constitution. And if these persons are all electors of the State, they are qualified under the Constitution to sign the referral petitions. Under Section 25 of the Constitution, the legislative power of the State is vested in the Legislature, while reserving to the people the rights of initiative and referendum.

The Legislature, on the one hand, and the people, on the other, are co-equal legislative bodies. The people, by the initiative and referendum processes, may amend or repeal an Act of the Legislature; and the Legislature, on its part, may amend or repeal an Act initiated by the people, if it complies with the constitutional restriction that no measure enacted or approved by a vote of the electors shall be repealed or amended except upon a yea-and-nay vote, upon rollcall of two-thirds of all of the members elected to each house.

For reasons set out herein, we find that the signatures objected to under petitioners' paragraph VIII–F are valid and that they were properly counted by the Secretary of State.

The petitioners, in paragraph VIII–G, next challenge the counting of 415 signatures on the petitions which were returned to the referral "Committee for the Petitioners" for correction or amendment. Objection to these signatures, as corrected or amended, was made upon two grounds: (1) that the purported postoffice addresses and residences of the signers were inserted on these petitions out of the presence of such signers; and (2) that the purported postoffice addresses or places of residence were inserted on these petitions without the express authority or knowledge of the signers.

The petitioners contend, in paragraph VIII–H, that an unknown number of these signatures are invalid because the circulator inserted the residence or postoffice addresses of the signers out of the immediate presence of the signers, and that some of the petitions as originally filed, which were found to be insufficient and were returned by the Secretary of State to the referral committee for correction or amendment, still are invalid after correction or amendment because all of the information was not placed upon the petitions in the presence of the signers.

The proceeding before us is brought for the purpose of reviewing the finding of the Secretary of State on the issue of the sufficiency of these petitions. It is not contended that the signatures are not the genuine signatures of the persons whose names appear or that each signature was not written by the person whose name it purports to be or that such person is not, in each case, an elector of the State. The contention of those attacking the sufficiency of the petitions is merely to the effect that each of these persons did not himself write in his residence and postoffice address, or that he did not date his signature himself. As we heretofore have pointed out, all that the Constitution requires is that the person sign his own name and that he be an elector of the State of North Dakota. These signatures clearly comply with this fundamental constitutional requirement. Nowhere in the Constitution is there a requirement that the signer of the petition place his residence, postoffice address, and date of signing on the petition in his own handwriting. Such requirement, if such there be, is a requirement of statute. But the statute itself does not say that each signer must give this information in his own handwriting. Thus the circulator or anyone else may write the residence, postoffice address, and date on the petition at the direction of the person who actually has signed his name to the petition.

It is contended, however, that such authority should have been given at the time the elector signed the petition. It is true that that is the time when such information usually is given. But where the signer has failed to do so, and the Secretary of State returns the petition for correction or amendment, such addition may be made as a correction or amendment to the petition, and when so made it becomes a part of the signing. The Constitution specifically provides that the committee of sponsors of a referendum petition shall be given twenty days in which to make corrections or amendments. If the provisions of the statute now are interpreted as being so restrictive that amendments or corrections, by inserting the residence, postoffice address, or date, may not be made after the elector has signed the petition, the statute clearly would be unconstitutional and in violation of the constitutional provision which gives to the committee the right to correct or amend petitions.

We were advised, on oral argument and by the return of the respondent in this proceeding, that each of the signers who had neglected to insert his residence or postoffice address was contacted by telephone and that his authority to insert his residence and postoffice address was given over the telephone. This, assert the petitioners, was insufficient to make such

signing valid, citing Dawson v. Meier, *supra.* In *Dawson,* this court did say that it was permissible for an elector, in signing an initiative or referendum petition, to use commonly understood abbreviations to indicate dates or cities, towns, or other places of residence, or postoffice addresses, and that such "Abbreviations and ditto marks must be inserted by the signer himself or by someone at his direction at the time of signing so that the whole proceeding constitutes one act."

This language would indicate that the date, residence, and postoffice address must be inserted by the signer at the time he signs the petition, or by someone in his presence at that time. But to so hold would make the provisions of Section 16–01–11, North Dakota Century Code, invalid, for it would nullify the constitutional provision which authorizes the Secretary of State to give to the referendum committee twenty days in which to make corrections or amendments. As previously pointed out in this opinion, all that the Constitution requires is that each signer on each petition be an elector of the State. Anything in addition to the constitutional requirement would make the legislation unconstitutional. To facilitate the exercise of initiative and referendum, this statute provides for giving to the Secretary of State certain information regarding each signer. If the information is given, how can it be said that such information must be written on the petition by the signer himself? The elector must sign his own name. That is all that is required by the Constitution. The information which Section 16–01–11 requires is for the purpose of giving to the Secretary of State certain information relative to each signer. If the elector signs his own name, and if the information as to residence, address, and date is given and is correct, it is immaterial whether it was written by the elector himself or by someone else at his direction. Whether such direction is given at the time of the signing of the petition or is given in attempting to make corrections or amendments to the petition is not important. Where such corrections or amendments are made by someone at the specific direction of the signer, the corrected information becomes the act of the signer *ab initio.*

But, say the petitioners, how can the person who signs the affidavit which is required to be appended to each petition sign such affidavit and say that each signature is the genuine signature of the person whose name it purports to be, and that such person is a qualified elector, if this information is gained in some manner other than by the personal knowledge of the circulator?

The requirement that an affidavit be attached to each copy of the petition, which affidavit is to state that each signature is the genuine signature of the person whose name it purports to be and that each such person is a qualified elector, is a requirement of statute, not of the Constitution. While this statute was enacted to facilitate the exercise of the power of referendum by giving aid to the Secretary of State in his determination of whether the signatures on the petitions are sufficient, the requirement that each copy must have attached an affidavit to the effect that each signature is the genuine signature of the person whose name it purports to be and that each signer is a qualified elector, clearly calls for information which the signer of such affidavit, of necessity, must obtain from others and which may be sworn to by him only on information and belief. We so held in Wood v. Byrne, 60 N.D. 1, 232 N.W. 303 (1930).

Since the circulator of a petition can only take the word of a signer that he is an elector, and such circulator's affidavit therefore is made on information and belief, we believe that information given on the telephone by a signer as to his residence and postoffice address could also be sworn to by the circulator on information and belief. The objective of our

Constitution and of our statute is fulfilled where the signer himself writes his name on the petition, even if he authorizes someone else to write in his residence and post-office address and the date, whether such authority be given in person or by telephone. It is a sufficient compliance with the statutory provisions if the necessary information is given as to each signer so that a check may be made to determine whether such elector did, in fact, sign the petition.

■■■ The Constitution does not prescribe the procedure for the Secretary of State to follow when petitions are presented to him. Just what he shall do in examining the petitions or how he shall determine the sufficiency of the petitions is not specifically set out. So the Constitution places upon the Secretary of State the duty of determining, in the first place, whether the petitions conform to the requirements of the Constitution and the laws of this State. In the discharge of such responsibility placed upon him, the Secretary of State must exercise a certain amount of discretion. Can we say that he has abused this discretion in passing upon the petitions here under consideration? We do not believe that an abuse of discretion has been shown.

The decision of the Secretary of State finding the petitions sufficient is approved, for reasons set out in this opinion, and he is directed to place the said measure upon the ballot to be voted upon by the electors of the State at the next primary or special statewide election, whichever occurs first.

TEIGEN, C. J., and KNUDSON and PAULSON, JJ., concur.

ERICKSTAD, Judge (dissenting).

I dissent.

Although § 16–01–11 of our Code, the statute which was enacted by the legislature in 1925 to facilitate the use of the initia-tive, referendum and recall provisions of our state constitution, is admittedly vague, I do believe that it should be construed to accomplish its objective, rather than to defeat it.

Less than fourteen years ago this Court, speaking through Judge Morris, said:

The statute was intended by the legislature to safeguard and facilitate the use of the initiative and referendum for the benefit of the people of the state by discouraging fraud and abuse and minimizing mistakes that might occur in the use of the right.

Dawson v. Meier, 78 N.W.2d 420, 424 (N.D.1956).

The tenor of the majority opinion seems to be that unless fraud is alleged and proved our Court should not be too concerned about whether the statute has been complied with for the reason that if the statute is construed to require too much attention to detail it must of necessity fail as contravening that part of § 25 of our state constitution which reads:

Nor shall any law be enacted * * * in any manner interfering with the freedom in securing signatures to petitions.

North Dakota Constitution § 25.

The unfortunate result of such an approach to a review of referendum petitions is that it makes discovery of and prosecution for fraud almost impossible. It may ultimately discredit the referendum. The search for fraud is usually a very time-consuming effort and there is not always a great amount of time intervening between the approval of petitions by the secretary of state and the preparation of the ballot by him.

In Shore v. Meier, 122 N.W.2d 566 (N.D.1963), petitions for the referral of House Bill 771 of the 1963 session of our state legislature were filed with the secretary of state on June 7, 1963, and found sufficient by him on June 12, 1963. On

June 13, 1963, because the governor had called a special election to be held on July 17, 1963, on other referred measures, the secretary of state prepared and certified to the county auditors the form of the ballot to be used in the special election. On July 1, 1963, a petition was filed with our court asking us to review the secretary of state's findings of sufficiency and, following a hearing before our court on July 5, we rendered a decision on July 8, 1963, dismissing the petition for review for the reason that the form of the ballot had been submitted by the secretary of state to the county auditors and we were therefore powerless to act notwithstanding that fraud was obviously present. In that case this court, speaking through Judge Burke, said:

> In this proceeding, the exhibits, beyond any doubt, establish gross and extensive fraud. Visual inspection of the petitions provides additional evidence from which fraud may reasonably be inferred. This lamentable proof of venality on the part of a petition circulator, if circulator be the right word, can not justify ignoring the clear mandate of the Constitution.
>
> This is a review of the sufficiency of the referendum petitions. Upon such a review the only question is whether the petitions are sufficient to require the placing of the measure, referral of which is sought, on the ballot. If the request for review is timely and the referendum petitions are found insufficient for any cause, the Court may order the measure excluded from the ballot. If, however, as in this case, the review is not sought until after the ballot is prepared no such relief may be granted. The petition for review is therefore dismissed.

Shore v. Meier, 122 N.W.2d 566, 568–569 (N.D.1963).

In *Shore,* because the fraud was so patent, pages of telephone directories having been copied on the petitions, disclosing names of deceased as well as of living persons, the petitioners were able to act quickly; but even so, not quickly enough.

With that experience to guide us, I believe that our statute and our constitution should be construed so as to discourage fraud in future referendums.

It is true that in this case fraud is neither alleged nor proved, but we must realize that the construction we place on our statute and constitution in this case will set the standards of conduct for the circulators of petitions in the future.

In *Dawson,* fraud was neither alleged nor proved, yet the court set aside a number of signatures because the postoffice address was not followed by the place of residence. It, however, held that the name or number of the precinct was a satisfactory description of residence.

In the instant case, the majority have now found that a reference to a county satisfies the residence requirement of the statute. In so holding they have not facilitated the search for truth, but have delayed it. In their action in this regard the majority have approved many addresses that if used as a mailing address would result in a return of the mailed matter to the sender for lack of a sufficient address. A great many of the signatures carried with them only such information: Burleigh Co., Bismarck, N. D.; Stark Co., Dickinson, N. D.; Morton Co., Mandan, N. D.; Williams Co., Williston, N. D.; Barnes Co., Valley City, N. D.; Stutsman Co., Jamestown, N. D. How could such vague information facilitate checking by the secretary of state, the public, or our court? It is quite obvious that the construction placed on the statute by our court does not facilitate the legitimate use of the referendum.

I disagree with some of the other holdings of the majority, but shall discuss only one. One thousand six hundred fifteen signatures were allegedly obtained by Mr.

K. K. Kittler. In his affidavit, as a part of the petitions, he said (1) that he circulated the petitions personally; (2) that he knew that each signature appearing on the petitions was the genuine signature of the person whose name it purported to be; and (3) upon information and belief, that each person whose signature appeared upon the petition was a qualified elector of the state of North Dakota.

Although the secretary of state could not know from the face of the affidavits that they were in any way questionable, and thus properly counted the signatures, it now appears that Mr. Kittler made those affidavits to petitions, many of which were circulated by others under his supervision, so that he did not see the actual signing of all the signatures. In accepting those signatures as genuine we, as a court, not the secretary of state, are condoning a very loose practice and one that will not only encourage fraud but will make the prosecution of it impossible. If what a person says under oath does not bind him the oath is meaningless.

I write this dissent, not because I think it will gain any support from our court either today or in the future, but because I believe that it demonstrates that the law stated in the majority opinion now necessitates both constitutional and statutory reform. It is my hope that those who believe in the right of the people to refer legislation and who at the same time recognize the value of the stability and continuity that come from legislation enacted by the duly elected representatives of the people, will want to consider possible changes in our constitution and our statutes to prevent serious difficulty in the future. For those who are interested, I refer for study a recent decision of the Court of Appeals of Maryland, Barnes v. State ex rel. Pinkney, 236 Md. 564, 204 A.2d 787 (1964).